### ROBERTS CONE MFG. CO. et al. v. BRUCKMAN et al.

(Circuit Court of Appeals, Eighth Circuit. June 12, 1920. Rehearing Denied October 1, 1920.)

No. 5310.

1. Patents ⬥327—Consent decree conclusive of issues between parties.

A consent decree, adjudging the validity, scope, and infringement of a patent, is conclusive between the parties of such issues, and in a supplemental bill by complainant, seeking to extend the relief to another machine, claimed to be essentially the same as the old one, defendant is estopped to deny that the latter infringed.

2. Patents ⬥328—1,071,027, for machine for making ice cream cones, pioneer and infringed.

The Bruckman patent, No. 1,071,027, for a machine for making ice cream cones, although using in the machine a number of old elements, has added new essential elements by which it effects a new and highly useful result which entitles it to construction as a pioneer; also held infringed.

Appeal from the District Court of the United States for the Western District of Missouri; Joseph W. Woodrough, Judge.

Suit in equity by Frederick A. Bruckman and others against the Roberts Cone Manufacturing Company and others. Decree for complainants, and defendants appeal. Affirmed.

See, also, 255 Fed. 957, 167 C. C. A. 249.

H. A. Toulmin, of Dayton, Ohio (Culver & Phillip, of St. Joseph, Mo., and H. A. Toulmin, Jr., of Dayton, Ohio, on the brief), for appellants.

Albert E. Dieterich, of Washington, D. C., for appellees.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. Appeal from decree of infringement of Bruckman patent No. 1,071,027, covering a machine to manufacture

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ice cream cones. This decree was on a supplemental bill. The original proceeding was for infringement of the same patent by another machine, and resulted in a consent decree, adjudging validity and infringement of the Bruckman patent, and enjoining use of the machine there involved. This consent decree was entered during the trial of the case as a result of a licensing arrangement then made. Thereafter appellants changed the machine being used by them and refused to pay royalties under the license upon the new machine, claiming that it was an essentially different machine. Thereupon appellees applied for a contempt citation, and asked discovery of the new machine. The trial court ruled that there was no cause shown for such citation, allowed discovery, and stated that appellees might reform their pleadings into a supplemental bill, which they did, praying injunction, accounting, and cancellation of the former license as applicable to the new machine, and for general relief. A motion to reverse and transfer to the law docket of the trial court, filed in this court, was adversely determined. 255 Fed. 957, 167 C. C. A. 249.

The contentions of the parties here are most conveniently stated from the standpoint of the appellees, and are as follows: (1) That the consent decree estops appellants from questioning, in this supplementary proceeding, the validity of the Bruckman patent and the infringement by the old machine used by appellants at the time of that decree; (2) that the construction of the Bruckman patent in regard to equivalents should be liberal, as that patent was a pioneer in the industry of automatic cone making machines; (3) and that the new machine is in essence the same as the old, and therefore an infringement. The appellants claim the contrary as to these three contentions.

[1] 1. Consent decrees as to validity, scope, and infringement in patent cases are regarded as constituting no adjudication of such matters which will affect other than the parties consenting thereto. But they are intended by the parties to control their rights in respect to the matters covered thereby, and they do have that effect. The method of enforcing this result is by estopping either party from denying the binding effect of the decree so procured. When, as here, a patent is, in a consent decree, adjudged valid, and infringed by a certain machine, that decree has, as between those parties, settled that that patent is valid, and that machine is an infringement. When thereafter complainant desires by a supplemental bill to extend the relief to another machine, which he claims is essentially the same as the one held to be an infringement, the issue thus presented is whether, in the light of the patent as valid, the new machine is essentially the old infringement.

[2] 2. Such an inquiry into the similarity of the new machine and the old infringement must, of course, be made in the light of the claims, scope and character of the patent. It is therefore of importance to examine the contention of appellees that these patents should be liberally construed as to equivalents, because the patent is a pioneer. Appellants contend that this claim of pioneering is dissipated by an examination of the prior art and the prior commercial usage in the industry. It is therefore necessary to examine the patented machine and

the prior art and commercial usage. The purpose and accomplishment of the patented machine is to receive sweetened batter, and through a continuous operation, during which the product is not touched by hands, to bake, extract, and place upon a receiving table finished ice cream cones. The method of operation is for a dipping arm to pick up batter from a receptacle, deposit this batter in proper quantity in cone-shaped molds, to place and secure the cores in the molds for the purpose of properly distributing and forming the cones, to pass this combination over a heating surface, where the batter is cooked, to then carry the cooked cone away from the baking place, to release the core and open the mold in such a manner that the cone will drop into a cutting tube, where surplus adherences of cooked batter are removed, and to deposit the finished cone upon a conveyor, where it is carried on to a packing table. A prime commercial result accomplished by the machine is the elimination of all contact of human hands with the cones during the process of production. There is considerable heat about cone machines, because of the baking unit. Handling under such conditions would be highly unsanitary; also, the sugar in the batter tends to cause adherence of the cones and the overflow from them to the molds, thus necessitating much handling to detach the cones. It is also claimed that it was difficult and hazardous for employés to handle these hot cones in the hot machine. By eliminating these objectionable features this machine has accomplished a desirable result in a novel and useful manner.

While only 13 of the 70 claims of the patent are involved here, yet, for the purpose of testing the character of this patent as a pioneer, it should be considered as a whole, having in mind the entire invention, its purposes, and its results. The Bruckman patent was applied for May 11, 1910, and issued August 26, 1913. Appellants claim that at most it is but an assemblage of early known elements. Appellants classify these elements and their several anticipations as follows: The horizontal rotatable wheel, anticipated by Trewick, No. 967,147, application May 28, 1908, issued August 9, 1910; Flagstad, No. 1,200,-600, application March 15, 1909, issued 1916; Croskey, No. 820,479, issued 1906; Dennison, No. 841,644, issued 1907. A series of separable molds, made in halves capable of opening and closing, with locking devices which are automatically operated to lock and unlock the mold halves, such mold being mounted on a horizontal rotatable table, Flagstad, supra; Dunn, No. 416,450, issued 1889; Croskey, supra; Dennison, supra. An adjunct to the molds, consisting of an arrangement of toggle bars to form locks for locking the mold halves together, and operable, at certain intervals, by cam devices by which the toggles are opened to unlock the mold halves and are closed to relock them, Dunn, supra; Croskey, supra; Lanier, No. 1,063,981, application March 21, 1908, issued June 10, 1913. A series of radial bars or arms, supported on a rotatable wheel and carrying each a series of cores, these bars being capable of extending out beyond the wheel and dipping down into a stationary batter tank standing near by, and thence traveling back and down to the molds, so that the cores carried by these bars will enter the molds with their adhering batter to fill the space

between the cores and the interior of the molds, Lanier, supra. A lock or latch to lock each radial core bar and its cores in the molds, and to unlock them, through the action of a certain cam bar or track, Lanier, supra. Individual ovens or casings to inclose each mold and its cores, to retain the heat from burners in order to bake the batter, Lanier, supra; Hauge, No. 907,797, issued 1908; Flagstad, supra. A device to trim the ragged edges off of the large end of the cones after or when they are discharged from the machine, Williams, No. 740,346, issued 1903; Hauge, No. 909,999, issued 1909.

In addition to this piecemeal treatment, appellants rely upon certain patents as having anticipated, as a whole, the general purpose and result of the Bruckman patent. The patents so treated are: Aegeter (Swiss No. 1,443), issued 1889; Dunn, No. 416,450, issued 1889; Valvona, No. 701,776, issued 1902; Baker, No. 712,473, issued 1902; Williams, No. 740,346, issued 1903; Hauge, No. 909,999, issued 1909; Marchiony, No. 746,971, issued 1903; Lanier and Driesbach No. 839,488, issued 1906; Dennison, No. 841,644, issued 1907; Lanier, No. 1,063,981, application 1908, issued 1913; Hauge No. 907,797, issued 1908; Flagstad et al., No. 1,086,448, application 1909, renewal 1913, issued 1914; Flagstad et al. No. 1,200,600, application 1909, issued 1916; Trewick, No. 967,147, issued 1910. Appellants also rely upon limitations in various interferences shown in the file wrapper.

Appellants also claim that appellees' machine is not truly automatic, since it requires the constant attention of an attendant to dislodge adhering cones.

A consideration of the patents suggested as anticipatory leads to the conclusions following:

(a) There was nothing new in a horizontal mold-carrying table as shown by Trewick, which was a pastry machine and automatic, containing hinged pans, revolving table partially within oven, and cover-locking device of rollers on covers and arcuated track; by Flagstad (application 1909, issued 1916), which was an automatic cone machine having horizontal rotatable table and mold-carrying; by Croskey, an automatic glass machine having a horizontal mold-carrying table; by Dennison, which was an automatic concrete post machine having horizontal mold-carrying table.

(b) Molds having separable halves automatically locking and unlocking were not new, but are shown in Flagstad, Dunn, Croskey, and Dennison patents.

(c) Mold located on a turntable, and automatically locked and unlocked by the operations of a cam device, were not entirely new, as shown by Dunn, Croskey, and Lanier. However, the analogy of the Dunn and Croskey patents is not complete, as they were for metal and glass, respectively, which substances did not involve one important problem presented in the extraction of cake cones, namely, the adherence of the cones to the molds. The applicability of the Lanier patent is weakened by the circumstance that it was yet in the Patent Office when the Bruckman application was filed.

(d) The dipping device seems in principle the same as Lanier (1,063,981).

(e) The extraction feature of partially removable cores is only faintly, if at all, suggested by the secondary cores in Lanier (1,063,981). The Bruckman method is automatic, eliminates need for a secondary set of cores, and thus reduces the operations, mechanism, and time required.

(f) The individual oven feature seems new.

(g) The trimming device is not shown in the Williams or Hauge citations.

Other earlier patents or applications, showing details of the cores, separable cones, locking devices, rotatable wheel, are Aegeter, 1889; Valvona, 1902; Baker, 1902; Lanier, 1906; Flagstad et al., No. 1,-086,448, application 1909; and Marchiony, 1903.

This examination of the prior art in connection with the Bruckman patent results in the conclusion that Bruckman, though using several known elements, has added other new essential elements, has in a novel manner assembled and combined all in one machine, operated through a single transmission of power, and thereby has accomplished a new and desirable result. Bruckman has created a machine which automatically takes a semifluid adhesive batter from a tank, carries it through all intermediate stages of formation, baking, trimming, and conveyance, and finally deposits it as a finished, fragile, commercially perfect crust cone on a table ready for packing into cartons. No such result had ever been accomplished before; it was a useful result, and accomplished in a highly satisfactory and sanitary manner. This entitles his machine to be considered a pioneer in the field of automatic production of sanitary batter cones. This conclusion has been reached on the district by a very able and careful judge in Bruckman et al. v. Stephens et al., 268 Fed. ——. The file wrapper and its limitations do not affect this conclusion, and is answered by the broad claims allowed by the Patent Office.

The claim that the machine is not automatic, because the extraction of cones must be assisted, is not impressive. This assistance seems exceptional, and not the rule. The circumstance that an attendant must be present, because it cannot be foreseen just when a cone will adhere, is simply the necessity which arises from the care of any machine operating with a material and under conditions which are not constant.

3. As to the infringement, the inquiry is a comparison between the old and new machines in the light of the Bruckman claims found to have been infringed by the court in the consent decree. When so examined, the new machine reveals but one element worthy of consideration, namely, the endless chain conveyor, in place of the rotatable table. Whether or not these two elements are exact mechanical equivalents it is unnecessary to decide, for this one substituted element cannot remove the entire machine, which contains so many infringing elements (as found in the consent decree), from antagonism to appellees' machine.

The infringement is established, and the decree should be and is affirmed.