## AMERICAN CONE & WAFER CO. et al. v. DENARO.

(Circuit Court of Appeals, First Circuit.    April 17, 1924.)

No. 1614.

1. **Patents ⬅109—Applicant could make method more specific and restate claim.**
   If applicant for a patent for an automatic pastry making machine desired to make his claim for his extraction method more specific, he had a right to do so and restate his claim.

2. **Patents ⬅160—Claims not restricted or narrowed by action on other claim.**
   Claims which were not amended or narrowed, but remained in the same form as when the application was presented, should not be considered as having been restricted or narrowed by any action of the Patent Office on other claims, but are entitled to a broad construction.

3. **Patents ⬅36—New and beneficial result evidence of invention.**
   Where patentee made use of well-known elements, yet by a new combination and sequence of operations he produced a new and beneficial result, never attained before, and largely cheapened the cost of production of ice cream cones, there is evidence of invention.

4. **Patents ⬅157(1)—Should be considered as a whole in testing character as pioneer.**
   For the purpose of testing the character of a patent as a pioneer, it should be considered as a whole, having in mind the entire invention, its purposes, and its results.

5. **Patents ⬅328—1,071,027, for machine for making ice cream cones, held infringed.**
   Bruckman patent, No. 1,071,027, claims 66 and 67, for machine for making ice cream cones, *held* valid and infringed.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the American Cone & Wafer Company and others against James Denaro. From a decree (283 Fed. 1011) dismissing the bill, plaintiffs appeal. Reversed and remanded.

Albert E. Dieterich, of Washington, D. C., and Frederick A. Tennant, of Boston, Mass. (Nathan Heard, of Boston, Mass., on the brief), for appellants.

Jesse A. Holton, of Boston, Mass., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

JOHNSON, Circuit Judge. This is a suit for infringement of letters patent No. 1,071,027, issued August 26, 1913, to Frederick A. Bruckman for an automatic pastry making machine, especially adapted to the manufacture of ice cream cones without the intervention of any hand manipulation.

Previous to Bruckman, ice cream cones had been made by baking them in mold cavities, from which it was necessary to remove them by hand. This work was not only hot and difficult, but was carried out under conditions which were more or less unsanitary, and, when sugar was used to sweeten them, the adherence to the mold surfaces was so great that their removal was accomplished with difficulty.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This has been overcome in the Bruckman patent by a very simple, but none the less ingenious, device. Bruckman has made use of well-known instrumentalities in the form of a rotatable wheel on which molds, made in two sections, are mounted, and to which the batter is transferred automatically, the molds are locked, and heat is applied to them. After the cones have been baked a predetermined time, the core, which has been locked into the molds, is first slightly raised in the baked cone to extract it from the cone; then, while the core is projected into the cone, the molds are unlocked, its sides are separated, and the core serves as a finger to strip the cone from either side of the molds to which it is likely to adhere, as these sides are corrugated to cause the molded product to cling to them and permit the core to be raised.

It is this slight raising of the core within the cone, and its use while projected into the cone to strip the cone from either side of the mold, that Bruckman claims to be the most important contribution which he made to the art of baking ice cream cones.

Of the 70 claims of the patent, 15 are alleged to be infringed by the defendant. Two of these claims, 7 and 69, contain all the elements employed by Bruckman, except that of trimming the cones, and are as follows:

"7. In a machine of the class described, an automatically actuated step by step rotatable wheel, molding devices carried by said wheel, a stationarily held tank for the substance to be molded, means for transferring the moldable substance from said tank to said molding devices as said molding devices pass said tank to load said molding devices, means for discharging the molded product from said molding devices at a predetermined place, and means for applying heat to said molding devices during their movement between the position at which they are loaded and the position at which they are unloaded."

"69. In a machine of the character stated, a rotatable structure including a set of molding devices, said set of molding devices comprising a sectional mold, and a core therefor, an arm pivoted on an axis in a plane at right angles to that containing the axis of rotation of the rotatable structure, means securing said core to said arm, means for opening and closing said sectional mold, means for moving said arm on its pivot to remove and restore the core from and to the sectional mold, means for supplying batter to said molding devices when said core is out of said mold, means for turning said rotatable structure, means for baking the batter in the mold, and means for discharging the contents of said mold."

The other claims relate to subcombinations, which set forth in wearisome and unnecessary repetition the instrumentalities employed in the patent in suit.

The extraction of the baked cone from the molds, which is claimed to be the principal contribution of Bruckman, is described in claims 66 and 67. Claim 67 is as follows:

"67. In a machine of the class described, a rotatable wheel, molding devices carried by said wheel, said molding devices each including a sectional mold and a core therefor, means for supporting said mold sections, means for opening and closing said mold sections at times, means for supporting said core, and means for lifting said core in said mold sections before said mold sections are opened, to thereby strip the molded product from said core, and means for holding said core, after it has been lifted, to project into the molded product until said mold sections have been opened to discharge the molded product."

Claim 66 differs from claim 67 only in that it is stated that the core is "slightly" lifted while it remains in the mold sections before said mold sections are opened.

Unless the extraction method, which is strongly contended is the central and important principle of Bruckman's invention, can be found in these claims, the finding and ruling of the District Court that the patent.in suit is not a pioneer in its field, and therefore entitled to only a narrow and technical construction, must be affirmed; but if it can be found in them, in the light cast by the drawings and specifications, Bruckman made a valuable contribution to the art, and produced a result never before accomplished, and not only these claims, but the other claims in the suit, should be given a liberal construction.

Claims 66 and 67 were inserted by amendment about two years after the filing of the original application, and when they were submitted the attorney for the applicant, in a letter to the examiner, stated:

"Regarding claim 66, it will be noticed that, in applicant's case, the core is first slightly lifted, while projecting into the mold to strip the molded product from the core, after which, the molds open while the core still projects into the molded product so that the core acts as a finger to strip the molded product from the female molds in turn. Now claim 66 has been amended to clearly set forth that the lifting of the core takes place while it remains in the mold and the lifting is but slight.

"Claim 67 is not met by the references, for the reason that it includes means for holding the ·core (after the core has been lifted) to project into the molded product; that is, for the purpose of acting as a finger to strip the molded product from the female molds."

These amended claims were .filed under the supplemental oath of the applicant, and even if they added new matter were correctly allowed. We think, however, that the principle of operation described in them was contained in the original application, construed in the light of the specifications and drawings.

Claims 34, 35, 36, and 37 of the original application all describe the lifting of the core in the mold "to disengage the molded product," and claim "means" for separating the mold sections, "when unlocked, to discharge the contents thereof."

In his specifications the applicant states:

"When the mold reaches the position $A$ the roller $14d$ on the end of the carrier will ride up on the track $47$ to slightly raise the cores $15$ out of the mold $5$, the swivel ball connection between cores $15$ and the head $14b$ being such that this movement may take place without disturbing the centering of of the cores $15$ in the cone."

The letter $A$ to which the specification refers shows that part of a track over which the roller carrying the core rides where the track begins to rise slightly, so that the roller riding upon the track slightly raises the core in the cone, and the drawing shows that the track continues at the same level from $A$ to $B$, where the sections of the mold begin to be opened; and then on to $C$ at the same level, where the mold is fully opened. The specifications state that the core is connected to the roller by a swivel ball connection, so that the movement of slightly raising the core would not disturb its centering in the cone, where it continues to be held until the sides of the mold are

unlocked and their separation begins, and remains in the same position until they are fully separated at C. This core is made of iron and weighs about two pounds, and if held within the cone, only slightly raised from its original position, so that it is freed from the cone and centered within it by means of the swivel ball connection, it will operate as a finger to strip the cone from either side of the mold to which it may adhere, and will co-operate with the unlocking and separation of the sides of the mold in disengaging the cone.

[1] If the applicant desired to make his claim for his extraction method more specific, he had a right to do so and restate his claims.

In Hobbs v. Beach, 180 U. S. 383, 396, 21 Sup. Ct. 409, 414 (45 L. Ed. 586), the court said:

"The patent had been the subject of an earnest contest in the Patent Office for four years, had been put in interference with five other devices, and it was scarcely possible that, after this long litigation, the patentee should not have detected defects in his original application, and have taken this opportunity of correcting them. His experience in this litigation had doubtless apprised him of the weak points in his prior specification and claims, and it was perfectly competent for him to restate them, provided his patent was not essentially broadened to cover intervening devices."

In National Hollow Brake Beam Co. et al. v. Interchangeable Brake Beam Co., 106 Fed. 693, 709, 45 C. C. A. 544, 560, the court said:

"An inventor is not called upon to state in his specification or claims for a patent all the functions of his device, or all the uses to which his invention may be put. When he has plainly described and claimed his machine or combination, and has secured a patent for it, he has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether or not he was aware of all these uses or methods of use when he claimed and secured his monopoly"—citing Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121.

"Doubtless a patentee is entitled to every use of which his invention is susceptible, whether such use be known or unknown to him." Potts v. Creager, 155 U. S. 597, 606, 15 Sup. Ct. 194, 198 (39 L. Ed. 275).

See, also, Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 53 C. C. A. 36; Kirchberger v. American Acetylene Burner Co., 128 Fed. 599, 606, 64 C. C. A. 107; I. T. S. Rubber Co. v. Panther Rubber Mfg. Co., 260 Fed. 934, 171 C. C. A. 576.

The slight raising of the core, and then holding it projected into the cone while the mold plates are separated, introduced a novel and patentable feature, and constituted the contribution of Bruckman to the art of baking ice cream cones.

The core performs a very important function, which is obvious and inherent within the mechanism claimed in the original application.

The District Court erred in finding that the Brookfield and Stivers patent, No. 835,235, anticipates the patent in suit in the method of extraction of the cone. That is a patent for a molding machine, in which glass insulators are molded, and the material introduced by hand. The office of the core in the Brookfield and Stivers patent is to keep the glass insulator from tipping or tilting when it is being released from the mold, and is clearly distinguishable from the office of the core in the patent in suit. In the Brookfield and Stivers patent two cores are introduced into the molten glass, one of them for the

purpose of creating a threaded opening in the glass insulator, and another above that to form an oblong opening, which will allow the insulator to be adjusted to any object upon which it is to be placed. The core which made the threaded opening in the insulator is entirely withdrawn from this opening, and the other core is fully withdrawn from the oblong opening created above the threaded opening. The core which has been withdrawn from the threaded opening is then allowed to remain in the oblong opening, in order to keep the insulator from tilting, so that it may fall out of the molds when they are opened without obstructing the passage. If the glass in cooling should adhere to the side of the mold, it could be broken off only by the use of a cold chisel. The evident purpose, therefore, of the cone remaining in the oblong opening at the top of the insulator, is not to strip the insulator from the sides of the mold, but to keep it straight, so that it will not tilt and obstruct its passage out of the molds.

In the patent in suit the core is but slightly raised within the cone, enough evidently to disengage it therefrom, and it remains projected into the cone until the sides of the molds are fully separated, for the very obvious purpose of stripping the corrugated sides of the cone from either of the mold surfaces. We can see no other purpose in retaining the core within the cone when the mold plates are opened, except that it may act as a stripping finger, and we think, as stated, that this is obvious and inherent in the mechanism claimed by Bruckman.

Glass molding is a nonanalogous art. The molten glass which is introduced into the mold is not heated; but it assumes the form of the mold when it cools. It does not expand, as does the batter introduced into the molds in suit, nor is there obviously the difficulty to be overcome which arises when batter, sweetened with sugar, is baked, of the molded product adhering to the sides of the molds, which are roughened and corrugated in order to hold the cone firmly while the core is slightly lifted within it.

The Brookfield and Stivers patent was considered by Judge Van Valkenburgh in Bruckman et al. v. Stephens et al. (D. C.) 258 Fed. 374, who found that it was distinctly in another art, and that it did not anticipate the Bruckman patent. His opinion is cited with approval by the Circuit Court of Appeals in Roberts Cone Mfg. Co. v. Bruckman, 266 Fed. 986. In both of these cases, which arose in the Eighth circuit, the court had before it the history of the patent, its file wrapper, and considered the prior art. The rule of comity is not one of courtesy only, but has been established for the very practical and useful purpose of producing uniformity of decisions, where the records are substantially the same, as is the case here, and should not be departed from, except for sound and convincing reasons.

[2] We have carefully studied the history of the proceedings in the Patent Office, as shown by the file wrapper, which discloses that the patent in suit was placed in interference with several patents in the pastry making art, and also in the glass molding art; that some of the original claims were canceled, and others were amended. No one of the 15 claims of the patent in suit, which it is alleged were infringed by the defendant, was amended or narrowed, and all are

in the same form as when the application was presented. They therefore should not be considered as having been restricted or narrowed by any action of the Patent Office upon the other claims, but are entitled to a broad construction. See Hess-Bright Mfg. Co. v. Fichtel, 219 Fed. 723, 135 C. C. A. 421; Pangborn v. Sly (C. C. A.) 284 Fed. 217; Veneer Machinery Co. v. Grand Rapids Chair Co., 227 Fed. 419, 142 C. C. A. 115; Stromberg v. Zenith, 254 Fed. 68, 165 C. C. A. 478; Goodyear v. Davis, 102 U. S. 222, 26 L. Ed. 149; Weber Electric Co. v. Freeman, 256 U. S. 668, 41 Sup. Ct. 600, 65 L. Ed. 1162.

While the manner in which the batter is supplied to the molds by the defendant differs from that used in the patent in suit, as does also the specific mechanism used by the defendant for locking the molds after the cores have been introduced into them, and also for unlocking the molds, yet we think these devices infringe the claims in suit, giving them the broad scope to which they are entitled.

[3] While Bruckman had made use of well-known elements, all of them old, yet by a new combination and sequence of operations, which he introduced in his step by step method, and the ingenious and novel method which he contributed for extracting the cone from the molds automatically, thus doing away with the unsanitary conditions caused by extracting the cones by hand, he produced a new and beneficial result never attained before and largely cheapened the cost of production. All this is evidence of invention. Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177.

We are fully in accord with the language of the opinion of the Circuit Court of Appeals in Roberts Cone Mfg. Co. v. Bruckman, supra, and quote the same:

"This examination of the prior art in connection with the Bruckman patent results in the conclusion that Bruckman, though using several known elements, has added other new essential elements, has in a novel manner assembled and combined all in one machine, operated through a single transmission of power, and thereby has accomplished a new and desirable result. Bruckman has created a machine which automatically takes a semifluid adhesive batter from a tank, carries it through all intermediate stages of formation, baking, trimming, and conveyance, and finally deposits it as a finished, fragile, commercially perfect crust cone on a table ready for packing into cartons. No such result had ever been accomplished before; it was a useful result, and accomplished in a highly satisfactory and sanitary manner. This entitles his machine to be considered a pioneer in the field of automatic production of sanitary batter cones."

[4] We are also in accord with the court in its finding and ruling that:

"For the purpose of testing the character of this patent as a pioneer, it should be considered as a whole, having in mind the entire invention, its purposes and its results."

The evidence discloses that Bruckman's device went into a large commercial use; that 44 machines have been manufactured, which show the elements set out in claim 66; that one-quarter of all the ice cream cones manufactured in the United States are made on the Bruckman machines, and the price has been reduced for cones from $15.50 and $17.50 per thousand in 1908 to $3 per thousand soon after the Bruckman machines came into use.

The number of machines given above includes, not only those which have the dip method of introducing batter to the molds, but also the pump method of introducing the same. The defendant makes use of a rotatable wheel, upon which female molds are placed, and uses the step by step method of the Bruckman patent. He introduces batter into these molds by dropping it into them before the cores close down in them, and his mechanism for locking the molds and securing the cores within them is somewhat different from that of the patent in suit, yet we think they are covered by its broad claims in these respects.

[5] In the matter of extracting the cones from the molds after they are baked, the defendant makes use of the same principle set out in claims 66 and 67 of the patent in suit, and uses the core, while suspended in the cone, to strip it from the sides of the molds when the same have been opened, and we think infringes these claims.

The appellee filed a motion that the arguments of counsel before the court below be added to the record, and we have been supplied with printed copies of these arguments. Counsel upon both sides had ample time for oral argument before us, and have filed extensive and comprehensive briefs, and the motion is denied.

The decree of the District Court is reversed, and the case is remanded to that court for further action not inconsistent with this opinion; the appellants recover costs of appeal.