### BRUCKMAN et al. v. STEPHENS et al.

(District Court, W. D. Missouri, W. D.   October 13, 1920.)

No. 214.

Patents ⟐328—1,071,027, for machine for making ice cream cones, infringed.
    The Bruckman patent, No. 1,071,027, for a machine for making ice cream cones which works automatically throughout the process, *held* for a broad pioneer invention, and infringed.

In Equity.   Suit by F. A. Bruckman and others against J. Q. Stephens and others.   Decree for complainants.

This is a suit for infringement of letters patent No. 1,071,027, dated August 26, 1913, covering a machine for the manufacture of ice cream cones. The purpose of the machine is to manufacture these articles in a clean, wholesome way, entirely automatically. The batter is introduced into a tank and flows down, and is automatically fed to the baking molds. The cones are baked, the molds are automatically opened, and the cones are automatically stripped loose from the molding surfaces, to which they have a decided tendency to adhere, especially when sugar is used in the cone mixture. They are then delivered out of the machine without handling. The delivered cones are brought out, nested one into the other, and placed in shipping boxes for sale.

The machine consists generally of a rotatable wheel or carrier on a vertical shaft placed at the center. On that wheel are mounted a plurality of units or baking molds, each of which units consists of a pair of half-mold sections. They also include a core element, the half-mold sections, fitting together, forming a mold, into which the core is inserted, with just enough space left between it and the mold to form the thickness of the cone.   The batter is in-

---

troduced into a batter tank, and goes down into a reservoir, into which the cores are dipped to acquire a quantity of batter. The cores are then brought back and placed in the female mold parts, and, after an interval of time, the core is locked down and the wheel passes around. When the wheel gets to a certain place in its travel, the cores are unlocked and start to ride upwards. The core bar is lifted up on a cam track, which causes the core to be slightly lifted in the cone, which is retained in the sections of the mold by the adhesion of the batter to the mold surface, which adhesion is augmented by the filigree design, which helps to hold the cone in. While the core is still projecting into the cone, that is, lifted only slightly, the sections of the mold are separated, and the core acts as a stripping finger that causes the cone, which has adhered to one side or the other of the half-molds, to be stripped free. The core is made of iron, and the molds are made of iron, and they are heated to a uniform temperature, which causes the cones to bake very rapidly. When the cone is raised slightly, the female mold parts are opened up, and, as they open, the core acts as a finger to detach the cones from the side to which they adhere; that frees the cone, which then drops down, goes through a trimming mechanism to remove the excess batter, and passes out on a conveyor.

Before the advent of the Bruckman machine there were no automatic machines in use in this or any other country for manufacturing ice cream cones of any sort. The old practice was to bake the cones in a little hand instrument or oven similar to waffle irons. Various other methods were successively employed, but none involved a complete, comprehensive, and co-ordinating automatic system.

The defendants' machine is in appearance almost a Chinese copy of the Bruckman machine. The batter is placed in a tank, is thence introduced into the molds, the molds are locked, the core is locked, and the cone goes through its cycle and is discharged in substantially the same way as by the Bruckman machine. There are some differences in detail, but the various elements employed are obvious mechanical equivalents of the Bruckman device.

Albert E. Dieterich, of Washington, D. C., and M. J. Ostergard, of Kansas City, Mo., for complainants.

G. Y. Thorpe, of Kansas City, Mo., for defendants.

VAN VALKENBURGH, District Judge (after stating the facts as above). I do not think there is any necessity of taking up more time in this case. We have here presented a patented invention, which has developed a very considerable and practical commercial value in the art, and necessarily there is a great deal of desire on the part of others similarly engaged, or who desire to become similarly engaged, to avail themselves substantially of the general disclosures made by the patent in suit. The defendant in this case has taken the stand, and has displayed a very candid spirit, and I believe has acted in good faith in this matter, due to the fact that there is in his mind, as in the minds of others, a misapprehension of the inherent nature of this particular device and invention. Like many others, he thinks that a technical mechanical departure from the patented structure relieves him of any charge of infringement. Many of the suggestions he makes would be quite applicable to a very restricted invention, where the patentability of the device depended upon some incidental feature in the way of improvement that has been added to something theretofore well and generally known. In such cases, if a little difference in means is devised, something that operates a little more advantageously in some of the features of the process of operation of the machine, that is conceived by

many to take the changed device out of the scope of the patented invention.

But I am compelled to look upon this as, in the true sense, a broad and pioneer invention. It is true that practically everything disclosed in complainants' device was previously known in some form or other, or in some art, standing by itself and separately used. Of course, it would be impossible to have had an apparatus for making ice cream cones that would not have displayed some of the characteristics of this invention; but it seems to me we have here the case of a man who has conceived a practical and commercial machine, capable of taking a substance like the batter of which ice cream cones are made—a brainless machine, purely mechanical, beginning with this batter and carrying it through to a point where this fragile cone is produced ready for the packing, a product that is easily broken, that requires the very greatest delicacy of touch and handling, and computation of the amount of the material, of the degree of heat, and of the period of contact, requiring almost mechanical precision; in fact, actual mechanical precision and exactness.

As I say, this machine carries this process to the point where this delicate and fragile product comes out, without the intervention of a man's hand, from the time it is batter until these fragile cones are ready to be picked up and put in the packing cases. The process must be taken as a whole. It must be viewed as an entirety, as it presents itself to my mind. I have had, of course, no experience in these matters; but I do know that, by hand, such processes are difficult, and it is to me almost inconceivable that any man could have invented a complex machine of this character (and it is a very complex machine) that could carry the material with which it deals to a successful issue with such mechanical precision. I do not think that man ought to be deprived of the benefit of what to me amounts clearly to inventive genius.

The Glass patent (Brookfield & Stivers, No. 835,235, November 6, 1906) is distinctly in another art, and, if it were not, I do not think it makes the disclosures presented by the patent in suit, nor any appreciable number of those disclosures that would be particularly helpful, or particularly suggestive, to anyone entering upon the study of this subject. Therefore the defense of anticipation fails.

There is much more that could be said, but I think this sufficiently indicates the view of the court upon the whole matter as presented. An injuncton will be granted as prayed. From the disclosures here only nominal damages should be awarded.

A decree may be entered accordingly.