### AMERICAN CONE & WAFER CO. et al. v. DENARO.

(District Court, D. Massachusetts. December 14, 1921.)

No. 845.

1. **Patents ⊙⇒328—1,071,027, for making ice cream cones, held not infringed.**
    Claims for subcombinations under Bruckman patent, No. 1,071,027, for machine for making ice cream cones, *held* not infringed; and the patent itself *held* not a pioneer and revolutionary invention.
2. **Patents ⊙⇒328—1,071,027, for machine for making ice cream cones, held anticipated in part.**
    The Bruckman patent, No. 1,071,027, for machine for making ice cream cones, *held* anticipated, as respects the extraction function of the core used in molding the cones, by Brookfield & Stivers patent, No. 835,235, although the latter patent refers to glass molding, as glass molding is an analogous art with pastry molding.

In Equity. Suit by the American Cone & Wafer Company and others against James Denaro. Bill dismissed.

Nathan Heard, of Boston, Mass., for plaintiffs.
Jesse A. Holton, of Boston, Mass., for defendant.

ANDERSON, Circuit Judge. This case was most thoroughly prepared, and has for eight days been tried before me with great ability on both sides. I can have no doubt that every material point has been adequately presented and urged. To write an opinion covering all the points raised would, considering my other assignments, require weeks perhaps months of delay, and then might be of little or no value to the parties and to the appellate court. As I have reached conclusions, I think a present expression, even if brief and somewhat crude, is preferable to the alternative of the substantial delay otherwise necessary.

[1] The plaintiff sues on a combination patent made up of devices all of which are admittedly old, with one possible exception, to which I will refer later. By this combination machine batter is, without the intervention of the human hand, molded, baked, trimmed, and turned out as finished ice cream cones. The defendant is not charged with infringement of the general combination. There is therefore no issue

before me involving either validity or infringement of that general
combination. But the plaintiff, not claiming infringement of its gen-
eral combination, sets up three so-called subcombinations, and alleges
infringement of the claims falling under each of these three subcom-
binations. I think the plaintiff fails on all three points, and that the
bill must be dismissed.

1. The plaintiff contends that the defendant's .method of putting
batter into the mold is the equivalent of the plaintiff's method. The
plaintiff's method is that of dipping the cores into the batter tank by a
device described as the leapfrog device. This device consists of an
arm carrying the cores so operated that it lifts the cores out of the
molds, dips them into the batter tank, then comes back and replaces
them in the molds. The defendant's method consists in pouring, by
a measuring device, batter into the closed molds. The cores then
enter the closed molds, and as they go towards the apex the batter
rises by pressure, assisted by heat, thus surrounding the core, and
forming a cone as the batter is baked.

In this respect I find and rule that the machines are different in
their method of transporting batter from the tank into the mold, and
that there is no infringement of any of the claims, whether valid or
invalid, involving that important part of the plaintiff's machine.

2. The second class of claims contended to be infringed are those
involving the opening, closing, locking, and unlocking devices of the
molds. I am far from being convinced that the plaintiff has any valid
subcombination for operating the molds. The devices themselves are
admitted to be old. It is only their combination in connection with
these molds which can possibly be claimed to be new. It is unneces-
sary to reach a conclusion on that point; for, even if the plaintiff has
a valid subcombination, the defendant's devices and method of opera-
tion are quite different. Another difference is that the defendant's
device does not lock, in the proper sense of the word, the molds as they
pass around the wheel. In the defendant's machine, after the cores
are by a spring pressed into the molds for two or three unit move-
ments, they then rest in the molds by gravity. On all the evidence I
find that the defendant has not in this particular infringed upon the
plaintiff's invention, if any invention there be.

3. The third class of claims on which the plaintiff most relies, and
which it claims to be new, is that covering the extraction method of
the baked cones from the molds, and said to be referred to most par-
ticularly in claims 66 and 67. Mr. Wadsworth, the plaintiff's expert,
contends that this extracting method is the essential idea of the plain-
tiff's invention, and that it is adequately disclosed in the patent. The
gist of the notion is that after the cone has been baked and is then held
tightly between the inwardly projecting iron core, weighing about two
pounds, and the inclosing iron molds, which open scissors fashion, the
core is first slightly lifted, thus detaching it from the otherwise ad-
herent cone, but leaving it well down in the cone; that then, as the
molds open, if the cone sticks to one side or the other of the opening
molds, the inwardly projecting core acts as a stripping finger or de-
vice to detach the cone from that side of the mold to which it sticks,

so that it will drop vertically down to the trimming device, and thence to the carrier.

I have the greatest difficulty in finding that that idea is disclosed in this patent. I cannot find it anywhere referred to in the early part of the specification, where this patentee, as is usual, makes a general description of what he says he has invented. I cannot find it in the later part of the specification, where he catalogues the advantages of his invention. Without reviewing the patent in detail, the impression made on me by repeated reading of it is that the inventor was thinking more about the probable difficulty of detaching the core from the cone than of detaching the cone from the separating molds. I find it difficult to resist the conviction that this patentee believed that, if the baked cone were ribbed, and so held tightly by the closed molds until the core had been lifted by the cam device, and that if then both sides of the mold opened (possibly with a little snapping motion), the cone would drop down.

Even in claim 66, where the phrase "slightly lifting" so much relied upon by the plaintiff is used, I find a context ending "to thereby strip the mold product from the said core"—not from the mold. And again, in claim 67, I find language as to "lifting said core in said mold sections before said mold sections are opened, thereby stripping the mold product from the said core"—again not from the mold. Nowhere do I find any language plainly saying that the core is slightly lifted in the cone in order that the core may then strip the cone from the mold.

It is, of course, elementary that there must be a disclosure of the invention. It is also settled law that the patentee is entitled to his entire invention if it can be found in the patent, fairly construing the specification, drawings, and claims.

Counsel cite on this point the decision of this court in I. T. S. Rubber Co. v. Panther Rubber Mfg. Co., 260 Fed. 934, 171 C. C. A. 576. I do not believe the doctrine there laid down is applicable to this case.

[2] But, even if I were able to resolve my doubts on this point, I find an insuperable difficulty in the fact that the Brookfield & Stivers patent, No. 835,235, seems to me plainly to anticipate the idea involved in the plaintiff's contention concerning the extraction function of the core, leaving it, after detachment from the cone, well down within the cone, so that it may, if necessary, operate to strip the baked cone from either side of the separating molds.

It is true that the Brookfield & Stivers patent refers to glass molding. Plaintiff's counsel now argues that glass molding is not an analogous art. But he was of a different opinion when he was prosecuting the Bruckman patent in the Patent Office. I think his view then was sound, and that he is in error now. At any rate, I cannot believe that on the points now important glass molding is not an analogous art with pastry molding. The result is that on this third point also I find and rule that the plaintiff has failed to make out a case against the defendant.

Plaintiff's counsel have urged, appropriately enough, the weight that should be attached by comity to the decisions on patent in the Eighth circuit. Roberts Cone Mfg. Co. v. Bruckman (C. C. A. 8th Cir.) 266 Fed. 986; Bruckman v. Stephens (Dist. Ct. W. D. Mo. W. D.) 268 Fed. 374. I fully agree that there ought to be comity among federal courts as to the validity and scope of a patent, and I am disposed to go in that direction just as far as I conscientiously and properly may towards uniformity in decision on the same issues involving the same patent. I need hardly add that I have the greatest respect for the considered opinions of that court on any question. Nevertheless it remains the duty of this and of every other court to decide every case on the record before it in accordance with what is thought to be the law applied to the facts thus disclosed. Compare the Eibel Process Case (C. C. A.) 274 Fed. 540.

Now this case has been very thoroughly tried before me. But the litigation in the Eighth circuit started with a consent decree admitting the validity of the patent. Such a beginning very frequently gives a bias or direction to subsequent litigation on that patent. Then Roberts, enfeebled by a consent decree, having agreed, as is contended, to pay royalties, undertook to make a noninfringing machine and escape his royalty payments. When his case came before the court, Roberts was, of course, estopped from denying the validity of the patent which he had admitted by his consent decree. Obviously that is a very different case on a very different record from that which is before me. Before the Roberts Case reached the appellate court, the Stephens suit was brought; and present counsel apparently agree that that case was not very thoroughly contested by the defendant. Judging the situation before Judge Van Valkenburgh from the statements made by the plaintiff's own counsel before me, I must conclude that Judge Van Valkenburgh had before him a very different record from that with which I am required to deal. What his decision would have been on the record before me I can only surmise. At any rate, I am not warranted in assuming that either of the courts in the Eighth circuit would on the record with which I must deal have reached the conclusions they did reach or would have held this patent a pioneer patent.

Taking the litigation in the Eighth circuit as a whole, I cannot on the record before me, regard the results there reached as a weighty authority in favor of the plaintiff's contention. Otherwise stated, and perhaps to repeat, I think the records are so different that I am not warranted in assuming that any of the judges participating in the decisions of the Eighth circuit would on the present record have differed substantially from the views which I have formed.

Assuming that the plaintiff made an invention by combining old devices into a new combination producing a new and useful result, yet both the disclosures as to the prior art (which I will not review) and the evidence of the plaintiff's own president as to the commercial results achieved seem to me to negative the contention that his invention was a pioneer invention making a revolutionary change in the cone-making art, and grounding a contention for broad and liberal construction of the claims. Machines of the Bruckman type were manu-

factured for commercial use in the fall of 1910, so that for 10 years they have had full opportunity to demonstrate their alleged superior merit. But the plaintiff's president testifies that out of an estimated annual output in the United States of 2,000,000,000 cones, machines owned or licensed by his concern manufactured only about one-fourth. But his evidence shows facts still more significant on this point, for out of the 44 machines owned or licensed by his concern, only one-half, or 22, are made in accordance with the Bruckman patent, accepting for the moment his construction of the Bruckman patent as not involving the use of the leapfrog dipping device. It is certainly strange, if the Bruckman patent was, as plaintiff's counsel claims, a revolutionary invention, that the plaintiff concern should be using and licensing as many machines of the endless chain or some other type, as of the Bruckman rotary table type.

Moreover, of the 22 machines described by this witness as of the Bruckman type, only 11, or one-fourth of the entire 44, embody the leapfrog dipping device. In the other so-called Bruckman machines the pouring or old filling process has been substituted.

It follows, therefore, from the evidence of the plaintiff's own credible witness, that not more than one-sixteenth of the cones manufactured in the United States are now made on machines of the type described in the Bruckman patent. A machine that in 10 years dominates not more than one-sixteenth of the available market can hardly be described as a pioneer and revolutionary invention.

The bill must be dismissed, with costs.

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes