## DENARO v. MARYLAND BAKING CO.
### No. 1415.

District Court, D. Maryland.
April 15, 1930.

Jesse A. Holton, of Boston, Mass., for plaintiff.

Bowie & Burke, of Baltimore, Md., and Albert E. Dieterich, of Washington, D. C., for defendant.

SOPER, District Judge.

The plaintiff in this case, James Denaro of Cambridge, Mass., is the patentee and owner of two United States letters patent, to wit, No. 1,497,293, applied for October 26, 1915, and issued June 10, 1924, and No. 1,-615,799, applied for December 28, 1925, and issued January 25, 1927, which will be referred to hereafter as the first and second Denaro patent, respectively. Both patents relate to improvements in machines for making ice cream cones. The bill of complaint charges infringement of both patents and seeks an injunction and accounting.

The defendant, the Maryland Baking Company, a Maryland corporation, has filed a counterclaim and set-off to the bill of complaint based upon United States letters patent to Joseph Shapiro, No. 1,460,611, applied for August 29, 1919, and issued July 3, 1923, and assigned by Shapiro to the defendant corporation. This patent also relates to im-

provements in machines for making ice cream cones. Shapiro is a stockholder, director, and officer of the defendant corporation.

Both parties to the suit are manufacturers of ice cream cones by machines, have come in contact with United States letters patent to Bruckman, No. 1,071,027, which was applied for May 11, 1910, and issued August 26, 1913. The defendant holds a license thereunder. It has been the subject of litigation between its owners and various infringers, including both Denaro and Shapiro. Decisions sustaining the validity of the Bruckman patent are found in the following citations: Eighth Circuit: Roberts Cone Mfg. Co. v. Bruckman (C. C. A.) 255 F. 957; Id. (C. C. A.) 266 F. 986; Bruckman v. Stephens (D. C.) 268 F. 374. First Circuit: American Cone & Wafer Co. v. Denaro (D. C.) 283 F. 1011; Id. (C. C. A.) 297 F. 913; Denaro v. McLaren Consolidated Cone Corporation (C. C. A.) 23 F.(2d) 384; Denaro v. McLaren Products Co. (C. C. A.) 9 F.(2d) 328. Second Circuit: McLaren Products Co. v. Cone Co. (D. C.) 7 F.(2d) 120.

The general character of the machines involved in the pending suit is described in these reports, because, generally speaking, the Bruckman or McLaren machine is similar to those used by the parties to this suit. Referring particularly to the description given in Bruckman v. Stephens, supra, it will be seen that, by use of the device, ice cream cones are automatically made. Batter is introduced into molds; the cones are baked; the molds opened; and the cones stripped loose from the molding surfaces and delivered out of the machines, automatically and without handling. The machine consists generally of a horizontal rotatable turntable or wheel, on a vertical shaft placed at the center. At the periphery, or outer circumference of the wheel, are mounted a plurality of units or baking molds each of which consists of a pair of half mold sections. Each of the mold units contains a plurality of cone-shaped mold cavities and a core element consisting of a plurality of cores affixed to a core bar. The cores are inserted within the mold cavities with just enough intervening space to form the thickness of the cones. The mold cavities are automatically filled with batter. The cores are then brought into place within the mold cavities, the mold unit is securely locked and the baking of the cones begins. Heat is applied as the wheel rotates, and, because of the small amount of batter used, the extent of the heated surface and the degree of temperature developed, the baking operation is speedily accomplished. By the time

it is finished, the unit has gotten to the place in its travel at which it is unlocked. The core bar is slightly lifted up by means of a cam track whereby the cores in the mold cavities are separated a short distance from the interior surfaces of the completed cones, while the latter are still retained in the mold cavities by the adhesion of the batter to the surfaces of the mold. Since the cores are raised only a slight distance, they remain still projected inside the cones. While in this position the sections of the mold are separated and the cores act as stripping fingers, so that the cones, which may adhere to one or the other side of the mold cavities, are stripped free. The cones being free then drop out of the machine.

The decisions, to which reference has been made, show that many, if not most, of the elements in the Bruckman machine were old, as for instance, the horizontal mold carrying rotatable table, and molds having separable halves automatically locking and unlocking. Bruckman, however, added a new element which made practicable the automatic cone manufacturing machine as it is now known. The extraction feature of his machine, whereby the slightly lifted cores remain within the cones during the separation of the mold cavities, was new and important, and was held by the courts in the First and Eighth Circuits, supra, to be entitled to a liberal construction by reason of the new and highly useful results which it brought about.

Compared with Bruckman's important contribution to the art, the patents at issue in the pending case disclose only minor improvements upon the structure which has been described. The improvements of the first Denaro patent are two in number and relate first to the manner in which the mold units are mounted in a main baking chamber, and second to the means by which the separable halves of each unit are held tightly together during the baking operation. The first of these improvements consists in the mounting of the separable mold units in a slidable fashion between inner and outer annular walls or rings located concentrically at the circumference of the wheel and in the co-operation of these two walls or rings with a fixed top wall to constitute a main baking oven in which the heat developed for the baking operation is confined. Thus it appears that this improvement comprises two elements, namely, the slidable mounting of the mold units in the annular walls, and the co-operation of these walls with a fixed top to constitute a single baking chamber. In the Bruckman machine, each of the mold units

constituted an individual baking oven; while, in the first Denaro patent in suit, the end flat plates of the adjacent mold units are joined together so as to form continuous annular walls. There seems to be no doubt that the introduction of these features combined in the first Denaro patent is of advantage in the manufacture of the cones. There is resulting simplicity and efficiency in the substitution of a single baking chamber for the individual baking chambers of the Bruckman machine in the first place, and in addition the slidable mounting of the separable mold units permits the half mold sections to move in a horizontal plane and in parallelism in their opening and closing movements, and makes it possible for the opposite faces of the split molds to come together in an exact fit when they are joined together. A precise closing of the separable halves is desirable so as to prevent altogether or to reduce to a minimum the escape of batter which tends to follow from the generation of steam and gases during the baking operation. If this escape is not prevented, undesirable extensions or fins are formed on the exterior walls of the cones.

Claims 18, 19, 20, and 22 of the first Denaro patent involve the first improvement which has been noted. Claim 18, which is sufficiently illustrative thereof, is as follows:

"18. In a pastry baking machine, a horizontally rotatable wheel having slidably mounted thereon, between vertical inner and outer walls, a plurality of molds provided with molding cavities, a plurality of core members, the cores of which are adapted to cooperate with the molding cavities, and a fixed top plate enclosing the said molds and core members during the major part of their travel; the said top plate cooperating with the said vertical, inner and outer walls enclosing the molds to form therewith a main baking chamber."

■ The defendant does not deny infringement of this claim; but it contends that the claim discloses merely a combination of elements old in the art unattended by new and useful results, and therefore does not involve invention. Certain of the prior patents, to wit, Roberts and Roberts, No. 1,375,609, and McGowan, No. 1,238,544, particularly relied upon by defendant to show invalidity of claim 18, were copending with the first Denaro patent in the Patent Office, and one of them, No. 1,209,939 was the joint invention of one Charles A. Costigan and Denaro himself. It seems to be clear that each of the features of claim 18 is separately shown in one or more of the earlier copending patents,

but none of them discloses the whole combination. On this account the plaintiff says that these earlier copending patents may not be considered at all, contending that, unless an earlier application involves the same combination as a late one, it is of no avail as an anticipation. A difference of opinion formerly existed as to whether matter disclosed in an earlier filed application, but not covered in its claims, could be cited against the claims of a later copending invention or application. The controversy was set at rest by the Supreme Court in Milburn Co. v. Davis, etc., Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651, which held that, even if the earlier applicant did not claim the invention, yet, if he disclosed it, the later applicant was not entitled to a patent. In such case it could not be said that the invention was not before known or used in this country, but, on the contrary, it would be true that the later applicant was not the original and first inventor, as these terms are used in R. S. § 4886, and the fourth paragraph of R. S. § 4920, as amended by the Act of March 3, 1897, c. 391, §§ 1 and 2, 29 Stat. 692 (35 USCA §§ 31, 69).

■ But the plaintiff contends that the rule of the Milburn Case is applicable only where, as in that case, the earlier applicant gives a complete and adequate description of the thing patented upon the later application; and hence is not applicable in the case at bar, because no earlier application shows more than a part of the structure covered by claim 18. The cited cases do not throw much light on the subject. See Sidney Blumenthal & Co. v. Salt's Textile Mfg. Co. (D. C.) 21 F.(2d) 470; Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259; Hazeltine Corp. v. Elec. Ser. Eng. Corp. (D. C.) 18 F.(2d) 662. No case subsequent to the Milburn Case seems to have decided whether the same rule should apply to a partial disclosure as to a disclosure of the entire subject matter. The plaintiff contends that it does not apply; but the common sense of the situation points the other way. If an independent inventor of a device gets nothing because, although unknown to him, it has been completely described in an earlier copending application in the Patent Office, it would seem to follow that an inventor is entitled to no credit for using in a new combination one element shown in an earlier application. He fails to show that he is the first inventor of the part in the same manner as, in the decided case, the later applicant failed to show he was the first inventor of the whole. Invention, indeed, may reside in

the new combination, but the case must be considered in the same light as if the earlier application had been published to the world.

 It seems equally clear that the copending joint invention of Costigan and Denaro may be properly cited against the patent in suit. Obviously the subject-matter of the prior joint invention was known to the later single applicant, and he cannot claim to be the first inventor of what it contains. Nor is he entitled to be treated as if he were the sole inventor of the joint patent. It is well settled that an inventor may claim in a later application matter which was covered by the disclosure, but not the claims of an earlier one. Montgomery Ward & Co. v. Gibbs (C. C. A.) 27 F.(2d) 466. But an applicant may not claim in a later application and secure a sole patent upon subject-matter previously invented and disclosed by the joint efforts of himself and another. On the contrary, the joint invention of two inventors is a good anticipation to the later invention of either. Dwight & Lloyd Sintering Co. v. Greenawalt (C. C. A.) 27 F.(2d) 823.

### Validity of Claim 18 of the First Denaro Patent.

As we have seen, the gist of this claim lies in the provisions for a main baking chamber formed by the association of a fixed top plate with vertical inner and outer annular walls, and the slidable mounting of the mold units between these walls. Invention is said to reside in the combination of these two features. The defendant shows, however, that neither of these features was new in itself.

The prior patent to Flagstadt, No. 1,200,-600, of February 10, 1914, depicts a machine equipped with a horizontal rotatable wheel, on whose periphery are inner and outer walls on which a plurality of mold units are mounted, and with a fixed top plate co-operating with the walls to form a baking chamber. The device preceded the Bruckman invention; its mold cavities are solid and not separable, and hence it lacks the automatic extraction step now almost universally employed. It lacks also the slidable mounting of the mold sections. Its relevancy to this discussion is its showing of spaced annular walls on a horizontal rotatable wheel co-operating with a fixed top to form a single oven.

The prior joint copending application for the Costigan and Denaro patent, No. 1,209,-939 (applied for March 27, 1914, and issued December 26, 1916), also shows a single baking oven, as distinguished from those structures in which each mold unit is installed in an individual baking chamber. A stationary top plate is placed close above the top of the molds and extends over and is in close contact with the upper edges of plates which are connected with the ends of the molds, thus forming a closed cavity above the molds. This machine, unlike Flagstadt's, is furnished with separable mold units permitting the automatic extraction of the cones, but, like Flagstadt's, it lacks the slidable mounting of the mold sections between oven plates which is disclosed in claim 18 of the first Denaro patent in suit.

The prior copending application for the Roberts and Roberts patent, No. 1,375,609 (applied for June 24, 1912, and issued April 19, 1921), also shows a horizontal rotatable wheel with inner and outer walls on its circumference, and a plurality of mold units between them; and in this case, there are found, upon the walls at points opposite the ends of the mold units, certain blocks equipped with slideways into which slide bars attached to the closing ends of the mold units are inserted. The construction is not so simple as that of Denaro, wherein the annular walls themselves are made up by the joining together, edge to edge, of the flat plates which form the ends of the mold units; but it is as true in one case as in the other, paraphrasing the language of claim 18, that the molds are slidably mounted on the wheel between vertical inner and outer walls. Thus the second feature of the claim is disclosed. It may also be added that, although Roberts and Roberts have separate individual ovens for the several mold units in place of the main single oven of Denaro, nevertheless the idea of a main baking chamber is not totally absent. There is a fixed continuous oven top with depending sides which forms a kind of tunnel, and tends to preserve the heat produced by the separate individual ovens during a large part of their circular progress on the wheel.

 It thus appears from a consideration of the patents to Flagstadt, Costigan and Denaro, and Roberts and Roberts, that the two important features of claim 18, although not combined in any one patent, are separably described and foreshadowed. It is of course well settled that invention may exist in a new combination of elements, old in themselves, which produce new and useful results, but it is equally true that the selection and putting together of the most desirable parts of different machines to make a new machine is not invention if each part operates in the same way as it operated before and effects

the same results, for the reason that such combinations are merely evolutions of the mechanic's aptitude, rather than creations of the inventor's faculty. United States Industrial Chemical, Co. v. Theroz Co. (C. C. A.) 25 F.(2d) 387, 391; Huebner-Toledo Brew. Co. v. Mathews Grav. Carrier Co. (C. C. A.) 253 F. 447; Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. The plaintiff claims that such new and useful results were produced by the first Denaro patent by a greatly increased, and hitherto unknown, capacity of the machine. This matter will be discussed hereafter, for it involves the consideration, not only of claim 18, but also of claim 24. It is sufficient to say at this point that there is nothing in the record in this case to indicate that the association of the idea of a unitary baking chamber of the Flagstadt and Costigan and Denaro patents with the idea of slidably mounting the separable mold sections found in the Roberts and Roberts patent is attended by any advantage other than one might expect from the putting together of the most promising parts of different machines. It therefore follows that claim 18 lacks invention, unless it may be found in the great commercial advantage springing from an unlooked for increased capacity. The same thing may be said of claims 19, 20, and 22.

Claim 24 of the First Denaro Patent.

The capacity of an ice cream cone machine is of course affected by the number of cavities in each mold unit depending upon the size or length of the unit. It is said that the peculiar structure of the Denaro machine made possible a longer mold than was known at the time when the application for the patent was filed, and that the second improvement of the first Denaro patent now to be discussed contributed to this end, since it provided an efficient means for keeping the molds tightly closed during the baking of the cones and thus prevented the formation of fins. This feature is described in the concluding clause of claim 24 of the patent which is as follows:

"24. In a pastry baking machine, a female mold unit comprising two half mold sections located between vertical, spaced plates and slidably mounted in horizontal guideways therein, whereby the said mold sections are permitted to move in order to join or separate, and means located between the said vertical, spaced plates adapted to hold said mold sections in closed position whereby tendency of the mold sections to separate under pressure of generated steam or gas is positively resisted."

The particular closing means located between the annular walls of the Denaro machine are shown in the specification of the patent. They consist of metal fingers applied directly to the back surfaces of the half mold sections. The fingers are rigidly attached to and react against a rock shaft which is journaled in the side oven walls, in which the mold sections are also slidably mounted. The operation of the closing fingers is controlled by a mechanism outside of the outer oven wall, but this mechanism does not contribute in any way to the maintenance of close contact between the mold sections after they have been brought together. When a mold unit approaches the station of discharge, a stationary cam track causes a slide in the outside of the outer oven wall to operate and to rotate the rock shaft. The fingers being integral with the shaft are thereby rotated away from the half mold sections which by suitable mechanism are then separated from each other in the slideways in a horizontal and parallel movement. The baked cones are then dropped out of the molds, and the separated mold units approach the next operation. By means of another stationary cam track, the slides on the outside of the baking oven are operated in the opposite direction, whereby the rock shaft is turned towards the closed position. The ends of the fingers are brought against the backs of the molds; the molds are forced into a closed position and held tightly together by the wedging of the fingers between the shaft and the mold sections. By this operation the tendency of the mold sections to separate under the pressure of the generated gases inside is positively resisted.

It is manifest that the vertical spaced plates described in claim 24 are the inner and outer annular walls of the machine which have been heretofore described. The requirements of the claim are that the means for holding the mold sections in closed position must be (1) located between these annular walls and (2) adapted to hold the mold sections in closed position. The defendant's machine resembles that of the plaintiff in respect to the closing means, in that it is equipped with similar cast iron fingers rigidly attached to a rock shaft journaled or mounted in the side oven walls, and these fingers are applied directly against the back surfaces of the half mold sections. So far as the fingers contribute to the maintenance of

the sections in a closed position during the baking of the cones, it is true that the closing means are located between the annular walls. But it does not appear in the defendant's machine that the fingers of themselves are adapted, as claim 24 requires, to hold the sections in closed position. On the contrary, this result is accomplished by a mechanism not found in the patented structure and not located between the annular walls, but attached outside the outer annular wall. In short, the actuating mechanism for the fingers in the defendant's machine differs from that of the patent. In both structures there are fixed cam tracks by which a slide is moved up and down vertically in order to impart a rotative movement of the rock shaft to which the fingers are rigidly attached. The difference between the structures lies in that the Denaro machine, as disclosed in the specification, is equipped with a rack and pinion device at the top of the slide for moving the shaft, whereas the defendant's machine has a toggle link device outside the outer wall whose action is controlled by the movement of the slide up and down upon the cam track. Moreover, Denaro's closing fingers are placed at such an angle to the backs of the mold sections that they are tightly wedged between the sections and the rock shaft when the mold is closed, and hence no added locking device is needed, because the mounting of the molds prevents any movement of the sections apart, except in a straight horizontal line. On the other hand, the fingers in the Shapiro machine are disposed at a much smaller angle to the backs of the sections, and hence are not tightly wedged between the sections and the shafts and do not prevent the separation of the sections unless the rock shafts are held stationary by the toggle mechanism outside the outer wall. It is therefore not correct to say of the Shapiro machine that the means adapted to hold the sections together are located between the annular walls, and it follows that the defendant does not infringe claim 24 of the patent.

This conclusion of the court was not reached until after a visit to the defendant's factory and after tests of defendant's machines in the presence of opposing counsel and experts. The plaintiff's expert had testified that the angle of repose of cast iron upon cast iron is approximately 30°, and that the angle of the fingers in the defendant's machine to a horizontal line drawn through the rock shaft at right angles to the mold sections, as shown by certain drawings of the defendant, is about 15°, and that there-fore the fingers are so firmly wedged in the closed position as to constitute a sufficient closing device located between the annular walls even if the rock shafts are disconnected from the outside toggle mechanism. But the inspection and tests of the machine demonstrated to the satisfaction of the court that these conclusions were not well founded. The angle of the fingers to the horizontal line in the machine was found to be about 30° and not 15°; and, when the machine was operated with the toggles disconnected, the mold sections cracked open and finning of the cones ensued.

The plaintiff attacks the good faith of the tests and the conclusions of the court herein expressed. The defendant's toggle mechanism, it is said, is adjustable and permits some variation of the angles of the fingers to the backs of the mold sections, and it is suggested that, prior to the test, an adjustment of the machine was made so as to reduce the angularity below that customarily employed, in order to create a specious deviation from the patented device. The tests in which the cones were baked were not completely satisfactory because of the fact that the machine was stopped to disconnect the toggle mechanism and was not running with its customary smoothness. When the first cones were baked with the altered machine, little or no finning took place, but it was at once discovered that the batter pump was not supplying a full charge of material to the molds. This defect was remedied, and, in the subsequent runs, the molds cracked open and very large fins or extensions were formed on the sides of the cones. There seemed to be no other explanation than that the closing device was not effective, unless the toggles were brought into play. It was, however, shown, upon the continuance of the hearing on the following day by weighing the cones produced, that too much batter had been put into the molds. It was conceded that this action was inadvertently taken, but it doubtless helped to bring about the excessive finning. However, when all these circumstances were taken into consideration, it seemed to the court that the tests demonstrated the inadequacy of the fingers taken by themselves to bring about an effective closing of the mold sections, and, in order to set any doubts at rest, the plaintiff was offered an opportunity for additional tests. Indeed the factory was again visited in order to observe the operation of other parts of the machine which will be presently discussed, but the plaintiff neglected to ask or to make an-

other test of the closing means of the defendant's machine. Hence the final conclusion of the court is that the defendant does not employ means located between vertical spaced plates adapted to hold the mold sections in closed position, and therefore does not infringe claim 24 of the first Denaro patent.

In reaching this conclusion, a strict construction of claim 24 has obviously been applied, but this treatment is just, for the claim clearly relates to a minor improvement only. See Newton v. Furst & B. Mfg. Co., 119 U. S. 373, 384, 7 S. Ct. 369, 30 L. Ed. 442; Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 492, 11 S. Ct. 846, 35 L. Ed. 521; Cumming v. Baker & Hamilton (C. C. A.) 144 F. 395; Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121. Moreover, other prior patents disclosed a closing device which seems to fall within the broad terms of claim 24, unless it is limited to the precise mechanical construction of the Denaro specification—for instance, the patents to Roberts and Roberts, No. 1,375,609, McGowan, No. 1,238,544, and Costigan and Denaro, No. 1,209,939. Each of these applications purports to solve the problem in a somewhat different mechanical way, and the very variety of the devices would seem to suggest, if it were necessary so to decide, that mere mechanical skill, rather than patentable ingenuity, is involved in the particular structure which Denaro devised.

The plaintiff, in order to support the patentability of claims 18 and 24 of the first Denaro patent, makes the contention that his invention made possible a cone making machine capable of an output 50 per cent. greater than that of the contemporary structures of 1915; for instance, the drawings attached to the Bruckman patent No. 1,071,027 of 1913 show that each mold unit contains only four mold cavities, whereas each mold unit of the first Denaro patent contains six mold cavities. The plaintiff's expert stated that the larger number of cavities in the Denaro machine was made possible (1) by the slidable mounting of the mold sections, and (2) by the efficient device which keeps them closed. The first of these features, he said, makes it possible to bring together half mold sections of unusual length with such precision that finning of the molds is prevented; whereas such exactness would not have been possible in the Bruckman machine if long mold sections had been used, because, in that structure, the mold sections were opened and closed on radially swinging arms in a scissors like movement. The second feature, which is involved in claim 24, is a closing mechanism designed to afford a greater resisting power than was necessary in prior machines so as to resist the increased tendency of the longer mold sections to separate. If it be true, as contended, that Denaro disclosed a combination of elements which made possible an output much greater than was previously known, this circumstance would doubtless go a long way to prove invention; but the evidence is insufficient to substantiate the claim. It appears from the drawings of other contemporary patents, for instance, Bruckman, No. 1,071,027, and Roberts and Roberts, No. 1,375,609, that the machines described were capable of making an equal or greater number of cones in one revolution of the wheel, as the Denaro machine, because they contained a greater number of mold units. The smaller number of cavities in each unit was thereby offset. A more important circumstance is the total lack of evidence that the feature under discussion has been accompanied by outstanding commercial success. One may indeed infer from the evidence that the Denaro machine is an efficient maker of cones; but, if it has possessed so great an advantage in these days of quantity production, one would expect to find that it had supplanted all other mechanisms in the business world. There is, however, no such showing. There are other successful manufacturers who do not use the Denaro patents, and Shapiro, if it be conceded for the sake of the argument that he is an infringer, seems to be the only user other than the plaintiff, of the Denaro machine. The plaintiff's contention of patentability is not aided in this case by the practical success of the patented structure.

### The Second Denaro Patent.

The second Denaro patent, No. 1,615,799 was applied for December 28, 1925, and issued January 25, 1927. Claims 2 and 7 are in issue. They are as follows:

"2. In a machine for baking pastry containers a core head carrying a plurality of cores, a pair of female mold sections movable into closed position to receive the cores and movable away from each other in parallelism to permit the baked product to drop out, means for effecting such movements of the female mold elements and means for insuring a movement of the core head in a line at right angles to the line of movement of the female mold elements and simultaneously with the movement of the latter."

"7. In a machine for baking pastry containers, split molds and cores therefor, means for supplying batter to the molds,

means for baking the batter in the molds, and means for loosening the baked product from the molds and cores, comprising (devices for separating the split mold sections in parallelism and in a line substantially at right angles to the core axes), inwardly projecting lips at the tops of the molds and cams for causing an upward movement of the cores as the split molds commence to separate."

The clause which appears in parenthesis in claim 7, as above set out, was inserted during the hearing as a disclaimer by plaintiff's attorney. It will be assumed for the purposes of this case, but not decided, that the plaintiff was within his rights in entering the disclaimer under these circumstances.

The machine in the second patent is quite similar to that of the first. The two claims, however, are for added elements or improvements. Thus the gist of claim 2 consists in means for moving the core heads upwardly in a vertical direction away from the mold units and simultaneously with the separation of the half mold sections as they move apart on a horizontal line. Claim 7 covers a so-called stripping device designed to assist in loosening the cores from the baked cones. Inwardly projecting lips at the tops of the mold cavities prevent the cones from rising with the cores in their upward movement. It is important to note that in this claim, as in claim 2, the upward movement of the cores takes place *as* the split molds commence to separate—that is to say, the upward vertical movement of the cores is simultaneous with the horizontal separating movement of the mold sections.

The plaintiff's expert explained that this simultaneous movement, which is an element of both claims, was intended to introduce an improvement upon the cardinal feature of the Bruckman patent. Bruckman, as we have seen, made possible the modern machine by devising an automatic extraction feature which consists in the raising of the cores slightly and yet retaining them within the mold cavities while the latter are opening. Thereby the cones are detached from any part of the interior surfaces of the cavities to which they might otherwise adhere. There are two independent movements; (1) The slight raising of the cores; (2) the opening of the molds. Bruckman provided that these movements should be successive in the order named. Denaro goes one step farther and provides that the two movements shall be simultaneous. The purpose of the change is to reduce the chances of breaking the cones, for it is thought that the stripping action of the cores within the mold cavities is less

abrupt if the cores are in an upward motion at the time. This new feature was advanced as a defense in the second suit brought by the owners of the Bruckman patent against Denaro, which is reported as Denaro v. McLaren Consolidated Cone Corporation (C. C. A.) 23 F.(2d) 384. The court held, however, that, whilst this change might be an improvement, it nevertheless involved an infringement of the Bruckman patent.

The defendant claims that, by reason of prior patents, claims 2 and 7 of the second Denaro patent are invalid. But it is necessary only on this branch of the case to consider the question of infringement. So far as claim 2 is concerned, it is obvious from the prior decision that novelty and invention must be found, if at all, in the relation of the lifting movement of the cores from the mold cavities in a vertical direction with the separation of the mold units in a horizontal direction; and in the fact that the two movements are simultaneous. It is also clear that in considering these claims, and in applying them to an alleged infringing structure, there is the same reason for strict construction as with the claims of the first Denaro patent. Bearing these considerations in mind, it is clear to the court from actual tests of the defendant's machine that it does not infringe the claims of the second Denaro patent under discussion. The drawings of the defendant's machine offered in evidence show that in this structure, when a mold unit approaches the opening operation, the core bar is first slightly lifted by means of certain lifting tracks. The mold sections at this point have not yet begun to open. The construction of the Denaro patent, on the contrary, is such that the lifting track raises the cores and opens the molds at the same time. The plaintiff concedes that it is established by the evidence that there is a slight preliminary upward movement of the cores in the defendant's machine which is completed before the mold sections are opened; but plaintiff contends that shortly thereafter, in the forward movement of the rotating wheel, the mold sections are given their first separating movement, and at the same time the track which controls the core bar throws it up to a higher level. A difference of opinion arose between counsel as to whether the exhibits, when properly read, indicate that the second lifting of the core bar takes place before or simultaneously with the opening of the molds; and consequently a second visit was made to the defendant's factory to settle the dispute. The actual test of the machine showed that the point of time at which the

second lifting of the cores took place varied in relation to the time at which the opening movement of the mold sections occurred. It was the observation of the court that sometimes the mold cracked open before the core bar started on its second slight lift, while, in other instances, the molds opened after the cores had been lifted the second time; and no instance in which the second lifting of the cores took place simultaneously with the opening of the molds was perceived. It follows that the plaintiff has failed to show infringement of claim 2 of the second Denaro patent.

For the same reasons it follows that claim 7 is not infringed. It may be added in respect to claim 7 that there was no novelty in the installation of the stripper plates consisting of the projecting lips at the top of the mold cavities. Somewhat similar structures are found in the patent to Mignerey, No. 1,480,284 of 1921, and the patent to Grossett, No. 1,122,913 of 1914. The plaintiff, however, distinguishes these patents on the ground that they do not involve the correlated movements of core bars and mold sections involved in the second Denaro patent. The importance of these movements to the validity of the patent is demonstrated by the disclaimer inserted in the claims at the hearing in order to distinguish them from earlier disclosures. It becomes therefore clear that the simultaneous movement which has been discussed at length is an essential element of the claim and since it is not involved in the defendant's machine, there is no infringement.

### The Defendant's Counterclaim.

The defendant's counterclaim is based on the patent to Joseph Shapiro, No. 1,460,-611, which was issued July 3, 1923, upon an application filed August 29, 1919. Claims 1 and 2 are relied upon. They relate also to a cone making machine containing a plurality of core members, and particularly to the means by which the core members are raised. There is a slide rigidly attached to the support of the cones, and a plurality of guideways for the slide. Below the guideways, a roller is pivotally mounted on the slide and, when the slide is raised up, the core members, secured to the support, are lifted out of the mold cavities. The testimony shows that the Shapiro machine, upon which this patent was developed, was built in collaboration with one James Roberts of Boston. Shapiro and Roberts entered into a power of attorney or agreement under date of May 17, 1919, under which Shapiro was to furnish the workshop, tools, labor, etc., and Roberts agreed to produce an automatic mechanical device for making ice cream cones original with him and of great benefit to the industry. He was to be paid $50 per week and receive $1,000 upon the completion of the machine, and he agreed to transfer to Shapiro all his right to the machine, and authorized Shapiro to apply for and procure patents thereon. After the contract was made, Shapiro moved to Baltimore bringing Roberts with him, and the machine was built in this city. The evidence shows that Roberts had formerly been in the employ of Denaro, and that Roberts was discharged by Denaro because he believed that Roberts was conspiring with outside parties to disclose the character of the Denaro machine. On September 12, 1919, Denaro came to Baltimore with warrants for the arrest of Roberts and Shapiro, on charges of breaking in and entering the Denaro factory at Cambridge, Mass., and of conspiring to steal certain plans and articles therefrom. Denaro went to Europe on November 25, 1919, to be married, and, during his absence, the case was called for trial and the defendants were acquitted. Notwithstanding this acquittal, it seems altogether likely that the knowledge which enabled Roberts to construct the Shapiro machine was derived by him while he was an employee of Denaro, and that Shapiro was aware of this fact. This becomes all the more probable in view of Shapiro's incredible statement on the stand in the case at bar that he did not ask Roberts as to his prior employment, and did not know that he had been employed by Denaro.

Wherever Roberts acquired the information which enabled him to construct the features of the machine, which form the foundation of the Shapiro patent, the evidence is convincing that he was not the first inventor. Numerous sketches and plans were produced at the hearing by Denaro, and it was established beyond doubt that the precise construction involved in claims 1 and 2 of the Shapiro patent was found in a machine built by Denaro in Cambridge, Mass., in November, 1918, and completed in the following February. A comparison of the drawings of the Shapiro patent with the dated drawings of Denaro shows the similarity of the structures. Denaro's testimony was corroborated by that of other witnesses. It follows that claims 1 and 2 of the Shapiro patent are invalid for lack of invention.

The bill and the counterclaim will be dismissed.