No. 88-95

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

Plaintiff and ~~Appellant~~ Respondent,

-vs-

RONALD ALLEN CLARK,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

McKinley Anderson, Bozeman, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark J. Murphy, Asst. Atty. General, Helena
A. Michael Salvagni, County Attorney, Bozeman, Montana
Jennifer Bordy, Deputy County Atty., Bozeman

---

Submitted on Briefs: Aug. 11, 1988

Decided: October 7, 1988

Filed: FILED '88 OCT 7 PM 2 49 CLERK MONTANA SUPREME COURT

*Ethel M. Harrison*

---

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Eighteenth Judicial District Court, Gallatin County. Defendant/appellant, Ronald Allen Clark, was found guilty by the District Court, after a jury trial, of Driving Under the Influence of Alcohol, a misdemeanor, in violation of § 61-8-401, MCA. From this judgment, Clark appeals.

We affirm.

Clark raises the following issues on appeal:

1. Whether he was denied due process by being deprived of a reasonable opportunity to gather exculpatory evidence, and;

2. whether the District Court erred in overruling the defendant's objections to the use of the Horizontal Gaze Nystagmus test as evidence at trial.

On July 15, 1986, at approximately 1:30 a.m., Deputy Sheriff Roy Irby of the Gallatin County Sheriff's Office observed Clark's vehicle traveling north on 7th Avenue. Deputy Irby saw Clark's vehicle begin to turn north into the southbound lane, nearly hitting the median, but quickly jerk into the proper lane of traffic. Deputy Irby followed defendant for approximately one and one-quarter miles, observing Clark swerving from lane to lane and straddling the divider line. One-quarter mile from Clark's home, Deputy Irby attempted to stop defendant by flashing his emergency lights. Clark did not respond, but instead drove to his home, where Clark exited his vehicle. Deputy Irby approached Clark and attempted to administer various field sobriety tests, including the Horizontal Gaze Nystagmus test (HGN). Clark performed the HGN test, the result of which indicated alcohol consumption. Clark refused to perform any other

sobriety tests. Based on Clark's erratic driving, results of the HGN test, smell of alcohol on Clark's breath, and his uncooperative, unruly behavior, Deputy Irby arrested Clark.

Deputy Irby brought Clark to the Gallatin County Detention Center. During a booking search, Detention Officer Lee Kersey discovered five Valium tablets on defendant's person.

During a reading of the State of Montana Implied Consent Law Advisory Form, Clark interrupted, asking for a physician's care. When Deputy Irby did not respond, Clark asked if he was being denied a physician's care, and Deputy Irby replied, "at this time." Continuing a reading of the implied consent form, Clark stated he wanted "a physician and registered nurse at this moment to take a sample of my blood." Deputy Irby replied, "just a minute." When Deputy Irby finished reading the implied consent form, Clark refused the breath test.

Deputy Irby placed Clark in the custody of Deputy Kersey for placement in a holding cell. Deputy Kersey testified that Clark was unruly, uncooperative and used profane language. Because of his behavior, Deputy Kersey made phone calls for Clark. Detention Officers made five calls for the defendant, including three to his physician, Dr. Kurtz. One such call was made immediately after Clark was placed in the holding cell and had requested care for a foot injury. During none of these calls did Clark request the physician to perform a blood test. Clark was held for a period of fourteen hours, at which time he was released on bond.

The first issue is whether Clark was denied due process by being deprived of an opportunity to obtain exculpatory evidence. Clark argues his two requests to Deputy Irby during the reading of the implied consent form, and the

3

Deputy's reply, placed the officer on notice he was requesting an independent blood sample. The State contends phone calls were made on Clark's behalf, three to his physician, and during none of these calls did he request a blood test. These calls, the State argues, gave Clark sufficient opportunity to obtain an independent blood test.

Section 61-8-405(2), MCA, allows for additional tests to determine blood alcohol, providing:

> [T]he person tested may, at his own expense, have a physician or registered nurse of his own choosing administer a test, in addition to any administered at the direction of a peace officer, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath, or urine. . .

As this Court has recognized, a criminal accused has a constitutional right to attempt to obtain exculpatory evidence. State v. Swanson (Mont. 1986), 722 P.2d 1155, 43 St.Rep. 1329; State v. Peterson (Mont. 1987), 739 P.2d 958, 44 St.Rep. 1268; State, City of Bozeman v. Heth (Mont. 1988), 750 P.2d 103, 45 St.Rep. 194. When the crime involves intoxication, the accused has a right to obtain a sobriety test independent of that offered by the arresting officer. Further, this right may not be abridged solely because the accused refused to submit to the sobriety test chosen by the arresting officer.

While these rights may seem absolute, they are not without limitation. Our decisions do not mandate police officers to affirmatively act to obtain exculpatory evidence, but instead, to avoid interference with efforts on the part of the accused to obtain a sampling of his blood.

> While the police have no duty to assist an accused in obtaining independent evidence of sobriety, they cannot

4

> frustrate such an effort through either
> affirmative acts or their rules and
> regulations.

*Swanson*, 722 P.2d at 1158. Clearly, the *Swanson* rule only applies when (1) the defendant has timely claimed the right to a blood test, and (2) the officer or officers do not unreasonably impede the defendant's right to obtain a blood test. "If a blood test of the defendant is unavailable through no unreasonable acts of an officer or officers, the *Swanson* rule does not apply." *Peterson*, 739 P.2d at 961.

No such unreasonable impediments exist in the present case. Rather, Clark was given an opportunity to obtain an independent sampling. The detention officer testified to phone calls made on Clark's behalf, including a call to Dr. Kurtz immediately after being placed in the holding cell. Clark requested physician attention for a foot problem. At no time did Clark request Dr. Kurtz to administer a blood test.

We recognize Clark twice requested a physician's care during the reading of the implied consent form. However, these requests in no way diminish the effect of the later phone call to Clark's doctor. We reemphasize our holding in *Swanson* to the effect that police officers have no affirmative duty to assist in the gathering of exculpatory evidence, nor may they frustrate such efforts on the part of the accused.

Next, Clark asserts the admission of evidence regarding the results of the HGN test was in error as lacking proper foundation. We find this argument unpersuasive.

Horizontal Gaze Nystagmus is the inability of the eyes to maintain visual fixation as they are turned to the side. In the HGN test, the driver is asked to cover one eye and focus the other on an object held by the officer at the

driver's eye level. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking.

The admission of this type of evidence is a matter of first impression in this jurisdiction. Several states, including Texas, Arizona, and Illinois, have allowed its admission as one method of incicating impairment. Howard v. State (Tex.App. 1987), 744 S.W.2d 640; State v. Superior Court (Ariz. 1986), 718 P.2d 171; People v. Vega (Ill.App. 1986), 496 N.E.2d 501. We adopt the position of these courts in allowing the admission of the tests. The pivotal question now becomes one of proper foundation.

At trial, Deputy Irby testified to the sobriety test administered to Clark. Upon questioning as to the "cause" of the nystagmus reaction, Clark objected to the testimony as lacking foundation. Appellant contends such testimony is not sufficient to establish a "general acceptance" of the test in the scientific community, relying on Frye v. United States (D.C.Cir. 1923), 283 F. 1013. This reliance is misplaced.

Rule 702, M.R.Evid., governs admissibility of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The foundation requirements surrounding expert testimony have been substantially liberalized, eroding the "general acceptance" doctrine enunciated in Frye. As stated in Barmeyer v. Montana Power Co. (1983), 202 Mont. 185, 193, 657 P.2d 594, 598, "[w]e hold that the general acceptance rule is

6

not in conformity with the spirit of the new rules of evidence." Unless an exaggerated popular opinion of the accuracy of the particular technique makes its use prejudicial or likely to mislead the jury, the better approach is to admit all relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination or refutation. Barmeyer, 657 P.2d at 598.

Clark contends Deputy Irby was not sufficiently qualified to testify as to the scientific reliability of the HGN test. However, the scientific reliability was nonetheless discussed through Clark's own witness, Dr. Curt Kurtz.

> Q: To the best of your knowledge and training, what different things would cause that [nystagmus] reaction to an individual?
>
> A: Acute trauma to the head, chronic trauma to the head from a previous injury, some damage internally to the brain from whatever reason; whether it be from stroke or infection, various chemicals. Under these, I lump prescription drugs, tranquilizers, pain medications, anticonvulsants and alcohol . . .
>
> Q: So, what you're saying is, that there's a multitude of reason?
>
> A: There's a multitude. Nystagmus is a very non-specific diagnostic test in the world of medicine. It's gained some credibility with alcohol, but if it's thrown in any other variable, it's kind of questionable whether it's really reliable . . .
>
> [Nystagmus] was instituted as one of the relatively simple . . . studies for a

7

police officer to do on somebody suspected of being intoxicated.

Upon the testimony of Dr. Kurtz, the District Court found sufficient basis for the admissibility of the HGN test. This Court has long held it is within the jurisdiction of the trial judge to admit scientific and expert testimony. State v. Sharbono (1977), 175 Mont. 373, 384, 563 P.2d 61, 68.

As to the results of the test, Deputy Irby testified he was certified through the Montana Law Enforcement Academy, completing the required number of training hours. Further, Deputy Irby testified he administered the test in the proper manner. No other foundation need be shown.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice John C. Sheehy, specially concurring:

I concur in the result of this appeal but not in the discussion of the nystagmus test.

A positive horizontal gaze nystagmus result should be approved by us as supplying probable cause for an arrest but not as positive proof of DUI, since so many factors can cause nystagmus. Here we have a driver who was on daily use of Valium by prescription. No distinction is made in the opinion that such drugs may themselves cause horizontal gaze nystagmus. An unsophisticated jury would take the result of the test in this case, without further explanation, as absolute scientific proof of DUI. The subject is much broader than that. A requirement for admissibility should be that the additional "battery" of field tests were also given, or that a blood alcohol test confirmed the nystagmus results. That is what other states require. Arizona v. Superior Court and Blake (Ariz. 1986), 718 P.2d 171.

_____
Justice