**ART METAL WORKS, Inc., v. ABRAHAM STRAUS, Inc.**

No. 5184.

District Court, E. D. New York.

Oct. 26, 1931.

Ward, Crosby & Neal, of New York City (S. M. Ward, Jr., K. S. Neal, and P. S. Haselton, all of New York City, of counsel), for plaintiff.

Janney, Blair & Curtis, of New York City (Robert S. Blair, William T. Knieszner, and George E. Crompton, Jr., all of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit in which infringement is alleged against the defendant of letters patent No. 1,673,727, issued to Louis V. Aronson on June 12, 1928, for a cigar lighter.

In order to pass on the questions of infringement and validity which are raised, although it may be stated that in general the essential parts consist of a wick and snuffer, a sparking wheel, and a finger piece in the space above the top of the receptacle, it is essential to study the detailed specification of the patent.

The device of the patent comprises a receptacle 10 elongated in horizontal cross-section and having side walls projecting upwardly to support operating shaft 13, and having wings 14 and 15 spaced apart adapted to shield the wick 16 which is housed in the wick tube 17 secured to the upper wall 18 of the receptacle.

To produce the sparks necessary to ignite the saturated wick, a pyrophoric element 20 is provided, housed in a tube 21, which projects upwardly through the receptacle 10 and its upper wall, also opening through the bottom wall 22 of the receptacle.

By means of a coil spring 23 abutting against a screw-threaded plug 24, the pyrophoric element 20 is pressed upwardly in operative engagement with the periphery of the wheel 26. The wheel 26 is journaled about a horizontal axis on top of the receptacle and is mounted upon a sleeve 27 carrying pinion teeth 28 "preferably formed integral therewith"; the sleeve 27 being journaled on a shaft 29.

The wheel is provided with a circular opening adapted to turn freely upon the sleeve 27, and the revolution of the wheel in the operating direction is caused by means of a washer 33, having a squared portion so as to be revolved by means of sleeve 27.

To permit the washer to return to normal position without causing revolution of the wheel, a pawl projection 34 is provided struck from one side of the washer coacting with ratchet teeth 35 formed on one side of the wheel and pressed laterally into contact with the ratchet teeth. Movement of the pinion teeth 28 of the sleeve 27 is brought about by a lever 38 which is adapted to be pushed by the hand of the operator. It is pivoted to the wall 12. To bring this lever to normal position a compression spring 40 is employed. The upward movement of the lever is limited by a portion 44 of the edge of the device.

It is to be noted that the lever is pivoted on the receptacle on the side of the wheel opposite from the finger piece 46. This lever is provided with rack teeth adapted to coact with the gear teeth 28 so as to cause revolution of the sleeve 27 in both directions of the movement of the lever 38. A finger piece 46 is carried by the rack teeth bearing portion 47 of the lever by which the lever may be depressed by the operator. It seems important, from the viewpoint of the inventor, to call attention to the location of the abradant wheel as being centrally over the top of the receptacle, while the wick projects upwardly on one side of the wheel and the finger piece is on the other side.

The snuffer arrangement and action must also be described in detail. The inventor says: "To provide a snuffer, the member shown in perspective in Fig. 6 is provided loosely journaled at 48, 49, upon the screw 29 and therefore on the same axis as the abradant wheel, and having rack or gear teeth 50 projecting beside the pinion or gear teeth 28 and meshing with the rack teeth 45, the snuffer portion 51 being carried by the member upon the portions 52, 53, thereof."

The mechanism is operated by pressing downwardly the thumb piece 46, which motion will cause the elevation of the snuffer and at the same time bring the abradant surfaced wheel in frictional contact with the pyrophoric element so as to cause sparks to be ignited against the wick. When the operator has obtained his light, finger piece 46 is released and the spring 40 thereupon returns the finger piece to its elevated position and restores the snuffer 51 to its original position surrendering the upper end of the wick

and extinguishing the flame. On this return movement the abradant wheel is not rotated, since pawl projection 34 on the washer 33 will slide over the ratchet teeth 35 of the abradant wheel 26.

Two forms of the defendant's lighter are said to infringe, the early form, claims 2, 7, 12, 13, and 14; and the later form, claims 7, 13, and 14.

For the sake of convenience the early type of lighter was referred to in the trial as the "Evans Automatic," and the later as the "Evans Roller Bearing Lighter." (The suit was defended by the Evans Case Manufacturing Company, as manufacturer of the alleged infringing devices.)

The Evans "automatic" lighter, generally speaking, embodies an arrangement of wick and snuffer, sparking wheel, and finger piece in the space above the top of the receptacle, and is operable, so says the plaintiff, in exactly the same way and produces the same results as the device of the patent in suit.

Claim 2 of the patent certainly may be read on the structure of the Evans automatic. The Evans device is a lighter having a fuel receptacle, a wick projecting from the top thereof and extending into it, an abradant wheel journaled at the top, a pyrophoric member co-operating with the wheel, a snuffer for the wick, the snuffer being journaled about the axis as the wheel, a gear member likewise journaled on the axis of the wheel, ratchet teeth carried by the wheel, a pawl operated by the gear, and a rack for operating the gear and the snuffer.

Claim 7 is equally applicable, differing only from claim 2 in being somewhat narrower, by the inclusion of "a spring projecting said pyrophoric member" and "a spring tending to force said finger piece upwardly," but in all other respects being substantially the same.

The same may be said for claims 12, 13, and 14, the remaining claims involved as to the automatic form of lighter.

The defendant seeks to avoid infringement on the contention that this form of lighter operates the snuffer only, and the snuffer in turn operates the wheel; but I cannot believe that such difference spells a successful evasion of the claims.

The defendant relies on the file wrapper to show that the plaintiff is estopped from contending that its operation in parallel is the equivalent of the "in series" operation of the automatic. Reference is had to the file wrapper and to the present claim 15 to show

that by amendment presented on May 8, 1928, the applicant wrote: "New claim 35 (claim 15 of the patent) also specifies that the snuffer be pivoted on the same axis as the wheel and that the finger piece be mounted independently of the snuffer, but still operates both the wheel and the snuffer."

Thus the applicant did stress the direct joint action from the finger piece of the wheel and the snuffer, and thus plaintiff might be estopped from contending that claim 15 is infringed by the defendant's structure; but claim 15 is not involved, and the estoppel should read only as to that claim, since authority seems to hold that the argument of solicitors in the prosecution of a case before the Patent Office should have no controlling effect unless the amended claims are sought to be expanded by the omission of an element which leaves them identical with the abandoned claims. R. Hoe & Co. v. Goss (C. C. A.) 30 F.(2d) 271; American Cone Co. v. Denaro (C. C. A.) 297 F. 913.

Since, therefore, the claims in suit, except claim 12, do not contain the foregoing limitation of claim 15, and since they are no broader than the invention as originally described in the specification, for the reasons heretofore stated I think claims 2, 7, 13, and 14 are infringed by the defendant's automatic lighter.

Now as to the second form of the defendant's device, that which has been referred to as the "roller bearing lighter," infringement is vigorously contested. Only claims 7, 13, and 14 are involved.

The question of infringement, I think, turns on the interpretation to be given the term "gear" as used in the following passages of those claims:

Claim 7 contains the following: "Means whereby upon pressing said finger piece downwardly said wheel is rotated by manual pressure to ignite the wick and said snuffer is removed from the wick, said last mentioned means comprising a rack on the finger piece and a gear operated thereby. * * *"

Claim 13 has the following clause: "Means whereby operation of said finger piece will operate the wheel and snuffer by manual pressure, said last mentioned means including gear means operated by the finger piece and acting to operate both the snuffer and the wheel."

Claim 14 includes the following clause: "Said last mentioned means comprising a

rack on the finger piece and a gear member operated thereby."

Reference to the file wrapper throws some light on the scope of the claims in so far as the passages just quoted are concerned.

In the amendment to the application filed May 8, 1928, on the subject-matter of the equivalence of a pin and slot connection and a gear connection, because of the cited reference to McAneny 1,167,089, the applicant said: "Claim 17 which was rejected on McAneny 1,167,089 is thought, however, to be clearly allowable thereover. McAneny does not show a gear member operating the snuffer nor any member operating to raise the snuffer, nor a rack member operating a gear member which operates the snuffer. The claim further brings in the cooperation of the various parts whereby the rack member operates both the snuffer and its gear as well as the pawl and ratchet members for operating the wheel. A recent interview was had with the Examiner wherein it was pointed out that a new and improved action was obtained by the use of a gear member for operating the snuffer in the manner set forth, and a mode of operation quite different from that shown by McAneny."

■ Now while it is true that the McAneny patent discloses a device containing many differences from the device of the patent in suit, nevertheless, in these structural patents in which frequently the improvement or invention is of very narrow scope involving novel combinations of old elements, the invention should be strictly construed.

■ Whatever invention is disclosed in the patent in suit is obviously of narrow scope. The art is a congested one, and though the commercial success proved by the plaintiff of the Aronson lighters commands due consideration in the determination of invention, that should afford no compulsion in determining the scope of the invention.

It seems to me that Aronson in the effort to secure claims 7, 13, and 14 restricted the commonly accepted connotation of the term "gear member."

■ In circumstances such as the foregoing, a different rule exists than that hereinbefore set forth; and the rule enunciated and discussed in United Metal v. Cole (D. C.) 46 F.(2d) 475, must be followed.

With this understanding we approach the defendant's construction.

The defendant uses a pin and slot arrangement for connecting the finger with the snuffer. The plaintiff urges that this is the full equivalent of the gear member of the claims. The defendant's witness Ray, differing from Mr. Hammer, contended to the contrary. But even if that question were to be considered apart from the history of the Patent Office proceedings, I think I should agree with Mr. Ray, for not only must the plaintiff be limited to the reading of claims 7, 13, and 14, as heretofore indicated, but it does appear that in the particular construction of lighter designed by the defendant, the use of the pin and slot introduces some advantage. Mr. Ray said: "Furthermore, a gear would not adapt itself so well in the defendant's structure as this slot and pin does, because on the standpoint of simplicity the slot is merely cut through a piece of metal, on the side of the piece of metal, whereas to cut teeth there would introduce more difficulty, or else there would have to be set on another member having teeth, so there are many advantages in the defendant's structure over those of the patent in suit, and many differences. * * * "

Conversely also the pin and slot arrangement as designed by the defendant could not be substituted in the patented structure. Mr. Ray said:

"Now, this rack and pinion can be used about the same axis as the wheel, and right opposite it. It does not interfere with the abradant wheel at all. But at the same time, it compels that the diameter of that pinion must be a certain minimum size on account of the teeth. You cannot bring the rack only so close to the axis. There are certain limitations that the use of this type of gearing introduces."

"Now, the pin and slot arrangement of the defendant could not be used at this point as they have used it in that structure. It could not be brought to a point where the arm of the slot, that is, the lever arm, became so short. * * * They [the defendant] were able to use it because the snuffer is not pivoted about the same axis as the abradant wheel."

Thus there is considerable doubt whether the gear member, and the pin and slot arrangement, are actually the equivalents in the patent sense of the term, for whereas they may accomplish the same result, they seem not to do it in substantially the same way.

For the foregoing reasons, I am of opinion that defendant's second form of lighter does not infringe the claims in suit.

There remains for discussion only the validity of claims 2, 7, 13, and 14.

The defendant relies on a number of prior commercial lighters, the prior inventions of Holtzman, of Lagerhohn, and many foreign and United States patents.

A brief reference will be made to the more important of these prior art patents.

■ McAneny, United States Patent No. 1,263,579: This patent is of a spring snap or trigger operated type. It has a protruding finger piece on the side. On the defendant's own analysis of this patent, there must be a rearrangement of the snuffer in order to meet even in terms the combination of claim 2. No such remodeling of the McAneny patent can be permitted to justify invalidity.

The same patent is urged against claim 7, but obviously the finger piece is not adapted to be pressed downwardly as the claim requires.

It is sufficient as to claim 13 to note that McAneny does not show the finger piece on the opposite side of the wheel from the wick; and as to claim 14, that the finger piece is incapable of being pressed downwardly.

Heyman, United States Patent No. 1,028,-462: This patent in order to read on the claims in issue seems to require, as admitted by the defendant, the use of a rack and gear shown in British patent to Bergmann, No. 10,260 of 1910, in order to come measurably near the Aronson device. Defendant's suggested combination of those constructions is ingenious, but it imposes a severe test of invention to seek to destroy the validity of the Aronson patent by such a reconstruction of the Heyman device. It involves not merely a matter of putting parts of prior art devices together, but also of omitting certain of the Heyman device.

British Patent to Newland, No. 138,395 of 1919: This patent fails to show the snuffer, and to be effective as anticipation, one would have to add the snuffer in exactly the manner set forth in the patent in suit. The plaintiff correctly says it would involve a complete reorganization of the Newland device.

■ Moreover, as has been repeatedly said, foreign patents must be strictly construed in order to serve as anticipations. Malleable Iron Range Co. v. Beckwith (C. C. A.) 189 F. 74; Simplex Co. v. Hamilton (D. C.) 21 F.(2d) 196.

Hofmann, United States Patent No. 1,-086,175: In order to make effective this patented device of the prior art, the defendant seeks to reconstruct by borrowing from the German patent to Vaudaine, No. 17,429 of 1882. Apparently there is no place in the Hofmann mechanism which would accommodate the Vaudaine finger piece. I think the two patents tend rather to justify the conclusion that the combination of the patent in suit was not obvious. As was said in Kurtz et al. v. Belle Hat Lining Co. (C. C. A.) 280 F. 277, 280: "Knowledge after the event is always easy, and problems once solved present no difficulties."

■ McAneny, United States Patent No. 1,239,801: This device differs in many respects from the device of the patent in suit. It is urged particularly against claim 2; but this claim calls for an abradant wheel journaled on top of the receptacle and a snuffer member journaled about the same axis as the wheel. The device shown in this McAneny patent certainly looks very cumbersome and would justify the belief that it would not be a comfortable lighter to carry in one's pocket. To endeavor to read claim 2 or any of the claims in suit upon this McAneny device is merely to find verbal similarities—a most ineffectual and inconclusive method of invalidating a patent. Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935.

German Gebrauchsmuster, No. 844,296 of 1923: As Mr. Hammer correctly said, the drawings and description of this document are obviously obscure and certainly not free from ambiguity. This is particularly true as to the means of connecting the spring n to the rack disc and associated parts. The same may be said of the arrangement of the rod m and the lever i.

■ To be effective as an anticipation, a foreign publication must contain everything on its face necessary to anticipate. It cannot be built up. It cannot be interpreted in the light of a fuller knowledge of a later date. It must stand unaided as a full disclosure of the patented structure at least to those skilled in the art. Obviously, the Gebrauchsmuster patent, No. 844,296 of 1923, fails to meet this test.

Austrian Patent to Ruszbacher, No. 55,-968 of 1912: This device is shaped like a pistol and operates with a trigger action, not in any way similar to the operation of the Aronson device. The parts are arranged in different order. They do not perform the same functions in the same way. It is easier to find points of difference than it is points of similarity between the two structures involved.

Von Horvath, United States Patent No. 1,018,763: This is a snap open type of lighter. A good many things would have to be done to the structure and additions made to meet the patented combination. For example, it is necessary to borrow from the German patent to Vaudaine, referred to above, to show the equivalence of a spring-actuated spark wheel and a manually-operated spark wheel. Defendant says: "Simply make Horvath's spring v close the finger piece or cover o so that cover o is swung open manually against spring v, as in German Grantz 294,-743." In other words, reconstruct in the fuller knowledge of the successful device. I do not think this Von Horvath patent of any importance.

British Patent to Bergmann, No. 10,260 of 1910: The Bergmann device does not show a ratchet and pawl mechanism for the abradant wheel. It certainly has no finger piece within the description and meaning of the patent in suit.

Austrian Patent to Hauzenberger, No. 86,979: This patent may be said to be as close as any of the references, but I see in it substantial differences from the patented structure. First of all, it may be doubted whether there is a finger piece as defined in the patent in suit; in this respect it is like the Bergmann device heretofore referred to. This device must be operated by a lateral squeezing action, and would not seem to me to be so effective as the downward movement of the finger piece of the Aronson pocket lighter, nor so likely to result in actuation of the abradant wheel. The return movement of the finger piece in the patented structure is upward, whereas in the Austrian device it is horizontal. In brief, the Austrian device does not show the characteristic mode of operation of the patented device. It is idle to suggest that this foreign device could be so modified, without inventive act, so as to anticipate. Suffice it to say that it presents no such organization of parts as Aronson.

German Patent to Gebhardt, No. 253,101: This patent is also one of the few references which may by any fair statement be regarded as close to the disclosure of the patent. This device, like that of Hauzenberger, involves a side wall pivoted at the bottom of the lighter receptacle. It operates a snuffer member overlying the entire top surface of the receptacle in one form; in another form, a fixed wall overlies the entire casing. The action is cumbersome as compared with the simple finger mechanism of Aronson. The abradant wheel is not operated by manual pressure but by means of a spring. Only half of the abradant wheel is serrated and there is no pawl and ratchet within the meaning of the patent in suit. This patent I must also discard as disclosing a different combination and mode of operation from that involved in the claims in suit.

German Patent to Hofmann, No. 248,-627: This patent is one of the closer references. The finger piece of this device extends along a side wall of the receptacle and is pivoted at the top.

In operation it is similar to Hauzenberger and Gebhardt relying as it does on a lateral pressure for operation of the device; and for the same reasons referred to in the discussion of those two patents, I attach no greater weight to this structure than to the Hauzenberger and Gebhardt devices.

The foregoing discussion involves all of the prior art patents discussed by the defendant as bearing on claims 2, 7, 13, and 14. In addition to the infirmities heretofore pointed out, the great number of them relied upon by the defendant to show lack of invention rather tends to demonstrate that Aronson's success was indeed the result of invention.

The defendant, in addition to the patents, relies on the Lagerholm 1925 prior invention. Lagerholm's application is owned by the Evans Case Company. The defendant relies on an old lighter alleged to have been made by Lagerholm in 1925. The model is certainly inoperative now, as the defendant admits, though it is maintained that when constructed it was in operative and practical use. Of the claims involved in the interference proceeding between the patent in suit and the Lagerholm application, only claims 7 and 14 are herein involved. The model shows a finger piece mounted upon a swinging casing which carries a snuffer cap and swings about the shaft P. The finger, it is true, moves downwardly, but only after being swung to the right against a spring. By means of a ratchet tooth it drives the gear. Means are provided for driving a gear on the shaft of the abradant wheel to coact with a pyrophoric element. This latter is spring-pressed downwardly to the top of the abradant wheel. A spring tends to raise the finger to its uppermost position, and another spring forces the ratchet and pawl members laterally along the shaft P heretofore referred to.

This model Lagerholm apparently was made in the spring of 1925, thus antedating the filing of the application for letters patent herein on October 16, 1926.

The plaintiff asserts that this model does not correspond to the disclosure of the Lagerholm application, and it appears that the Patent Office has not as yet passed on the question as to whether the model corresponds to the claims in interference. However that may be, the plaintiff contends that the proofs as to this Lagerholm model are insufficient; and, secondly, that it does not conform to the invention set forth in the claims in issue.

The proofs as to the construction of this model in April or May, 1925, are certainly not convincing. The testimony of Lagerholm and Reilly, the president of the Evans Case Company, which is defending the suit herein, is not corroborated by sketches, drawings, or any dated documentary evidence. There is no proof of the commercial manufacture of pocket lighters similar to the early Lagerholm construction. The later models with thumbwheel or spinwheel types are stated to have been made some time in 1926. So that between the alleged activity of Lagerholm in 1925 and the manufacture of the thumbwheel or spinwheel type of lighter in 1926, no activity is proved.

██ The Lagerholm application was filed on August 4, 1928. Assuming, however, the date of the construction of this model to have been proved adequately, can it be treated as other than an abandoned experiment so far as the claims in issue herein are concerned? Certainly there was no reduction to practice proved. The time intervening between the construction of this model and the filing of the application for letters patent—a period of more than three years—betokens no diligence on the part of the inventor Lagerholm. The authorities discussed in Greene et al. v. Beidler (D. C.) 47 F.(2d) 927, emphasize the requirements of diligence on the part of an alleged prior inventor and show that unreasonable delay will result in loss of rights as against the diligent inventor.

In sum the proof in respect to the Lagerholm model is not of that order which warrants the award of priority of *invention* to Lagerholm. See also Hambuechen v. Schorger, 56 App. D. C. 141, 10 F.(2d) 1006.

Finally, in respect to claim 14, the Holtzman invention is offered as an anticipation. The Holtzman application was filed March 3, 1926, antedating the filing date of the patent in suit. It is significant that despite the earlier filing date of the Holtzman application, his entire specification was revised in July, 1928, after the issuance of the Aronson patent on June 12, 1928. To this fact certain significance must be attached, particularly in view of the circumstance that prior to the issuance of the patent in suit the plaintiff had manufactured and sold in excess of two hundred thousand pocket lighters of the early Aronson form. The original title was changed from "smoker stands" and the original objects of the disclosure canceled and restated. By these amendments it was sought to transform the subject-matter from an ash tray smoker stand to a portable device.

In October, 1928, the Holtzman application was finally rejected. In December, 1928, the prosecution of that application was undertaken by the attorney for the real defendant in this and the prior suit involving the Aronson patent; and then an interference was requested and claim 14 of the patent in suit copied in the Holtzman application. So that it was not until the Evans Case Company acquired control of the Holtzman application that the subject-matter of the Holtzman application was in any way identified with the Aronson claims.

The Examiner denied Holtzman's request for an interference, saying in respect to claim 14:

"Claim 14, applicant's claim 50, more specifically defined the abradant wheel as 'journaled on top of said receptacle,' and defines 'means for projecting said pyrophoric upwardly from the top of said receptacle,' and also 'a finger piece carried on top of the receptacle.' Each of these clearly differentiates from applicant's device."

"The question of interference was considered by the office and Aronson's patent was issued four months prior to the final rejection in applicant's case. If applicant desired these claims to be considered they should have been sooner presented."

After persistent effort, however, the declaration of an interference was finally obtained. The interference proceeding, I understand, has not been concluded, or at least was not up to the time of the trial herein.

Comparing, however, the disclosure of Holtzman with claim 14, there are many points of difference noticeable in addition to the general aspect of dissimilarity of structure and purpose. For example, the top of the Holtzman receptacle is the small area covered by the snuffer cap 56. No part of the abradant wheel 44 is over this top, nor is it journaled thereon. The journal 38 is mounted in the frame 23 at a point distant from the receptacle top. The "means pro-

jecting said pyrophoric member upwardly from the top of said receptacle," as stated in claim 14, cannot be found in Holtzman, since the metal tube 49 of the Holtzman structure is quite outside the receptacle itself. The claim calls for "a finger piece carried on top of the receptacle, whereas the Holtzman finger piece 34 is carried by a projecting side frame.

Finally, the Holtzman device does not comprise a rack on the finger piece and a gear member operated thereby to remove the snuffer from the wick. Holtzman's rack 36 and gear 37 have nothing to do with the snuffer.

I hold, therefore, claim 14 valid over the Holtzman disclosure.

Among other defenses set up is that the patent is invalid for lack of a supplemental oath, and reliance is had on Cutter v. Metropolitan (C. C. A.) 275 F. 158.

I think the situation set forth herein is quite different from that presented in the cited authority. Without reviewing in detail the claims and specification as originally filed, I believe that the specification disclosed the subject-matter of the claims now in suit, and that, therefore, a supplemental oath was unnecessary. It may very well be that the specification in its final form presents verbal differences, but I do not think they go to the substance of the conception as described in the specification as originally filed. In consequence no supplemental oath was obligatory. Heller Bros. v. Crucible Steel (C. C. A.) 297 F. 39.·

In conclusion, therefore, I find claims 2, 7, 13, and 14 valid and infringed by defendant's first form of lighter; and claims 7, 13, and 14 not infringed by its second form of lighter.

Plaintiff may have a decree in accordance with the foregoing opinion.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.