**ART METAL WORKS, Inc., v. ABRAHAM & STRAUS, Inc.**

No. 5184.

District Court, E. D. New York.

July 25, 1933.

Ward, Crosby & Neal, of New York City (Joseph Lorenz and Kenneth S. Neal, both of New York City, of counsel), for plaintiff.

Blair, Curtis & Dunne, of New York City (Milton C. Weisman, Robert S. Blair, Edward F. Dunne, Jr., and William T. Kniesner, all of New York City, of counsel), for defendant.

GALSTON, District Judge.

This case is now before the court on an amended answer setting forth inequitable conduct of the plaintiff in the alleged misuse of the decision of the Circuit Court of Appeals, after the entry of an interlocutory decree in behalf of the plaintiff. See Art Metal Works, Inc., v. Abraham & Straus, Inc. (C. C. A.) 62 F.(2d) 79; Id. (D. C.) 2 F. Supp. 292.

The ultimate issue presented for determination is: Whether the plaintiff in its various activities was guilty of bad faith.

It is contended by the defendant that bad faith is the inevitable inference that must be drawn from a consideration of the plaintiff's acts. These, briefly, may be stated to be:

1. That on the day the opinion of the Circuit Court of Appeals was handed down, telegrams and letters were sent by the plaintiff to its salesmen throughout the country authorizing and instructing them to misrepresent the effect and scope of the opinion.

2. Also that immediately thereafter, plaintiff advised the trade of the decision by telegraph, circular letters, registered letters, advertisements in trade journals, and by the oral statements of its salesmen; and in so doing misrepresented the meaning, scope, and effect of the decision of the Court of Appeals.

3. By claiming profits from customers of the Evans Case Company on the sale of non-infringing articles, such as spin-wheel lighters, cigarette cases, humidors, and ash trays.

4. By representing that the Trig-a-lite did not differ in substance from the Evans Roller Bearing lighter and is an infringement of the patent in suit, No. 1,673,727.

The record includes depositions de bene esse of many witnesses taken in various parts of the United States, in addition to the testimony of a number of witnesses at the trial. The record is exceedingly voluminous. It is replete with instances of many occurrences, but for the most part they are largely cumulative.

Since the representations made by the salesmen must be considered in the light of the authority vested in them, it will be helpful to consider a telegram and a general letter, in evidence as Exhibits 11 and 12, respectively. The telegram reads as follows:

"This instant received decision of the United States Circuit Court of Appeals awarding us sweeping victory on every point involved in our suit against Evans Case Company for their infringement by their Automatic also Roller Bearing lighters of our patent 1673727 Stop Supremely happy to be able impart this wonderful news Stop Further details will follow tomorrow meanwhile okay to advise your trade but be careful not to indulge in any threats until our definite plan of campaign for damages is completely worked out regards

"Art Metal Works, Inc."

I do not believe that there is anything in this telegram from which bad faith can be inferred. It was but natural that the executives of the plaintiff should have been elated at the successful conclusion of a litigation that had lasted for years between the parties and which was at all times conducted in a spirit of bitter controversy, involving also conflicts in the Patent Office in respect to priorities of invention. The affirmance of the lower court's decision in respect to the validity of the patent and the broad scope extended to its claims certainly justified the plaintiff in considering a definite plan of campaign for damages.

The defense in the case was always under the control of the Evans Case Company, the manufacturer of the infringing articles. Such articles had been widely sold throughout the United States. The plaintiff could reasonably, therefore, look to the customers of the Evans Case Company, as well as to the Evans Case Company, for damages in such proper proceedings as might be brought against them.

Now as to the letter dated August 24, 1933: This, in the opening paragraph, reiterates the elation on the part of the secretary of the plaintiff in advising representatives of the plaintiff: "We had sustained a complete victory in our case before the United States Circuit Court of Appeals involving the infringement by the Evans Case Company of our Patent No. 1,673,727."

The second paragraph of the letter states: "As soon as our Ronson De-Light commanded its instantaneous success, they set out to devise ways and means to imitate it and believed that with their first so-called 'auto-

matic' form and with their later so-called 'roller-bearing' form, they would be able to circumvent our patent."

I must say that from the proofs before me, taken before the entry of the interlocutory decree, I was of the same opinion. It seemed to me that neither the Evans Case Automatic lighter nor the Roller Bearing lighter was independently designed by the Evans Case Company. It was apparent that the former was in direct imitation of the Aronson device, and the latter showed a skilled effort to combine what Aronson taught with features, perhaps, suggested by the prior art. But as a result of those proofs I was left with the undoubted impression that the defendant sought to avail itself of the teachings of the Aronson patent and profit by its pronounced commercial success.

Then there is this passage, which, though somewhat ambiguous in terms if read by others, must have been entirely clear to the salesmen: "It must be borne in mind by you that this decision naturally covers not only the pocket form of lighters but also their combinations, whether in sets or as units imitating our Tuxedo. It covers also their table lighters."

The writer of that letter was not a skilled rhetorician. He was using commercial English, which frequently lacks precision; but I think the fair inference to be drawn is that the salesmen were told that the decision covered lighters not only of the pocket form but also such other *lighters* as might be found in combination with other articles, whether in sets, i. e., smoking sets, or in other units.

In the third paragraph of the letter, the representatives of the plaintiff are informed that steps will be taken against the manufacturers of other lighters known as the Marathon and the Golden Wheel. Certainly that was well within the rights of the plaintiff.

The fourth paragraph is a statement that the Evans Case Company and its customers are liable for the damage which they have done by reason of the sale of infringing products. So they were.

Finally, in the fifth and last paragraph, there is the hope expressed that a larger business would result from the prevention of the sale of infringing articles.

I see nothing in this letter from which bad faith can be deduced, nor which would authorize the persons to whom the communications were sent to misrepresent in any degree whatsoever the scope and effect of the opinion of the Circuit Court of Appeals.

It is significant indeed that the defendant employed almost the same language in its telegram of August 24, 1932, to its own representatives, doubtless realizing that the recipients of the telegram would have no difficulty in understanding the language. The telegram read: "Discontinue on receipt of this wire all sales of present lighter in all forms individual pocket and in sets and combinations and table lighters."

On August 24, 1932, the plaintiff wired: "Received this day decision of the U. S. Circuit Court of Appeals awarding us sweeping victory on every point involved in our suit against Evans Case Company for their infringement by their so-called Automatic also so-called Roller Bearing lighters of our patent 1,673,727 Stop Further details will promptly follow meanwhile this telegram to promptly convey this information to you."

This telegram is complained of by the defendant because it recites a suit against the Evans Case Company. Literally the statement is incorrect, but the stipulation at this trial was that the defense was by the manufacturer, the Evans Case Company, and the actual defendant has taken no active part.

So far as the use of the words "Automatic" and "Roller Bearing" are concerned in this telegram and in other forms of communications and advertisements, it may be stated that throughout the trial of this case, prior to the interlocutory decree, two types of defendant's lighters were referred to by both sides as the "Automatic" and the "Roller Bearing," and the same terminology was employed by the Circuit Court of Appeals in its opinion and by this court likewise. No improper inference can be drawn from such terminology.

The defendant next calls attention to circular letters of the plaintiff to the trade dated September 13, 1932. To this letter is attached a notice bearing date August 26, 1932. This notice, it must be conceded, is perhaps unfortunate in terms. After reciting that the opinion of the Circuit Court of Appeals held the patent to be valid and infringed by the Evans Automatic and the Evans Roller Bearing lighters, there is stated:

"This decision confirms the position that we have always maintained that these Evans Lighters and others of similar construction constitute infringement of our patent. * * *

"Furthermore we must advise the trade that any further sale of these Evans lighters or others of similar construction now becomes

illegal according to the decision of the Court of Appeals."

Whatever inferences may have been drawn by the trade as to the meaning of this notice, so far as the matter of faith is concerned in the issuance of the letter by the plaintiff, due weight must be given to the fact that it was approved by plaintiff's patent counsel. Some of the trade believed that all Automatic lighters were held by the court decision to be infringed. But this is not justified by the language of the circular. I have no doubt that the plaintiff, advised as it was by patent counsel, sought to inform the trade that lighters embodying the same construction of the Evans Automatic and the Evans Roller Bearing lighters would be regarded by the plaintiff as embodying an infringement of the patent. The most that can be said is that the language is not as explicit as, perhaps, the situation demanded; but in the circumstances, the linguistic inadequacy is not sufficient to warrant the imputation of bad faith. Any doubt is dissipated by the phrase in the body of the notice to the trade, which reads: "Its decision *confirms the position we have always maintained.*"

The registered letters to some of defendant's customers, such as, for example, Defendant's Exhibit B, of October 12, 1932, to M. Rosenthal & Son, could readily mislead. Here we find a variation from the notice as approved by the patent counsel: "As we have already advised you, this patent was duly adjudicated by the United States Circuit Court of Appeals * * * the so-called 'automatic' and 'roller-bearing' lighters made by the Evans Case Company, also any other lighters of similar construction, were held to be infringements of this patent."

Strictly speaking, of course, the language was inadequate to express the full meaning of the writer, but after all, it was a layman's letter; and bad faith certainly does not appear on its face. Harris, the secretary, signed these various letters. If the letter be read with the circular letter of August 26, 1932, wherein it was clearly set forth what lighters were held to be infringements, the imputation of bad faith is not well grounded.

The same explanation disposes of the advertisement of September 8, 1932, in the Retail Tobacconist. The language is bad. It is not justified by the facts, but an evil intent need not of necessity be spelled therefrom, for, as has been said, not only the phrase "and others of similar construction constitute infringement of our patent," but also the phrase "or others of similar construction now becomes illegal according to the decision of the Court of Appeals," can be explained. Certainly it is not language couched in legal terms, but it could reflect the honest opinion of the commercial writer that all devices which embody the construction of the "Automatic" or the "Roller-Bearing" lighter would in the opinion of the plaintiff constitute an infringement "according to the decision of the Court of Appeals."

Other publications to which the defendant points recite: "Important: Ronson Lighters, Cigarette Case and Lighter Sets * * *." Of course, it may be conceded that cigarette cases and lighter sets were not manufactured under United States letters patent which were adjudicated and held valid; but other notices to the trade had stated that the adjudicated patent covered the plaintiff's Ronson lighters. Standing by itself, this notice might have caused a false impression to be drawn by the trade; but I take it that with the extensive distribution of the circular letter or notice of August 26, 1932, no discriminating person in the trade could reasonably have believed that this so-called important notice was to be read literally. In view of such wide distribution by the plaintiff of the circular letter of August 26, 1932, I do not believe that the paragraph was conceived in bad faith.

I can understand that some customers were misled, but much of the testimony in that respect may be viewed with doubt. Such testimony as that given by the witness Sol Sallan is not convincing. His understanding as to the meaning of the trade statement was certainly not that of his son, Raymond Sallan, nor of Hering of the same establishment. Raymond Sallan testified:

"XQ310. You never had any idea that Evans cases, if you sold an Evans case apart that was an infringement of the Ronson patent, did you? A. You mean after we got notice of this?

"XQ311. Yes, at any time. A. We never believed so, but we never looked at an Evans cigarette case as a separate item. We looked at it as a set; that is, we bought them as sets; we never bought them separately; we bought a set, we bought the two pieces.

"XQ312. Yes. If you sold a case apart from the set, you never considered that that would be an infringement, did you? A. No, we never considered it that."

And Hering said:

"XQ151. You never had any idea, did you, that you could not sell a cigarette case

302

separately from a set—I mean an Evans cigarette case separately—even though it came from the set, did you? A. No, I don't believe we did.

"XQ152. What? A. No, I don't think so.

"XQ153. That is, you thought of course you could sell the cigarette case if you did not sell it in conjunction with an Evans lighter? A. Yes, you could break the sets."

It is neither necessary nor feasible in this opinion to review the testimony of all the witnesses offered by the defendant and the instances in which alleged misconceptions arose. The foregoing extract is, perhaps, typical, as is the following, which relates to the testimony of defendant's witness Mr. E. D. Miller, the president of Square Deal Miller, Inc., of Detroit:

"XQ212. That if you sold it as a set, that would constitute an infringement? A. Yes.

"XQ213. That is your understanding? A. Yes.

"XQ214. Is that right? A. Yes.

"XQ215. And that was your understanding at that time? A. Yes.

"XQ216. But that if a cigarette case was sold separately, that would not constitute an infringement, isn't that right? A. Yes."

And the defendant's witness W. G. Harry, of the same corporation, testified:

"XQ139. I suppose, of course, you will testify, will you not Mr. Harry, that you thought you could not sell these compacts individually, is that right? A. That we could not sell them individually?

"XQ140. Yes, is that right, these compacts that you returned? A. Well, it is possible that we could sell them individually, but most of them were sets, most of them had lighters with them, and they were returned for that reason.

"XQ204. Did you think that the notice applied to individual cigarette cases? A. Only as complete sets, that is what I am referring to. Anything with a lighter or combination or anything as a set.

"XQ205. Perhaps I was a little unfair to you by not showing you the inside of the folder. A. That is all right.

"XQ206. In some instances there are individual cigarette cases. I do not understand you to say that you thought the notice applied to the individual cigarette cases only? A. Nothing only with the lighter top, anything consisting of a lighter or combination."

Representations made by the plaintiff's salesmen to customers are urged as reprehensible and as evidence of bad faith; but in no instance do I find that any representation was made with authority from the principal to mislead the trade. Efforts of salesmen to sell their merchandise and earn commissions on their sales not infrequently result in overstatements. But in the matter of bad faith the principal should not be bound by unauthorized representation; and there is nothing in this record which warrants the belief that the salesmen had instructions from the employer which deviated from the telegram and letter heretofore discussed.

Indeed, on the whole the evidence on overstatement by the salesmen is not conclusive. Most of the people visited by the salesmen knew of only two automatic lighters. So said defendant's witness Petzold, and referred to the Art Metal lighters and the Evans lighters. Hearing, it is true, refers not only to the Evans and the Ronson, but also to the Marathon and Golden Wheel of other manufacturers. But there was some talk which led him to understand that the plaintiff was considering bringing suit against "the Golden Wheel people and other lighter concerns," and that led him to believe "that we could not sell any kind of an automatic lighter that was made."

Nor should it be overlooked in weighing the testimony of those who had been selling Evans Automatic and Roller Bearing devices, that they were hostile to the plaintiff. After all, they had sold infringing devices and were in consequence subject to suit for an accounting of the profits realized.

In the proofs of the alleged scheme to damage the Evans Case Company, testimony was taken with respect to alleged attempts to collect profits on the sale of noninfringing articles. Letters are referred to as having been sent to Montgomery Ward & Co., Jaffrey Jewelry Company, St. Louis Jewelry Company, Leonard Krower & Sons, Inc., and to James McCreery & Co.

The letter to Montgomery Ward & Co.: This letter repeatedly refers to infringing lighters. It expresses no unwarranted demand.

The same is true of the letter of October 13, 1932, to the Jaffrey Jewelry Company, of the letter of September 10, 1932, to the St. Louis Jewelry Company, of the letter of September 9, 1932, to Leonard Krower & Sons, Inc., and of the letter of August 30, 1932, to James McCreery & Co.

The letter of September 21, 1932, to Leon-.

ard Krower & Sons, Inc., obviously must be read in connection with the letter to the same firm of September 9, 1932.

The testimony taken at the trial with respect to the accounting against James McCreery & Co. must also be considered in the light of the original demand made in the letter of August 30, 1932, to James McCreery & Co.

The conclusion is inevitable that in none of these cases did the plaintiff seek profits not comprehended within the terms of the opinion of the Circuit Court of Appeals.

Finally, inequitable conduct and bad faith are predicated on the institution of the action pending in this court against the same defendant because of the sale of the Trig-a-lite device.

It is contended that by virtue of the position taken by the plaintiff to sustain the validity of the letters patent in suit, in the effort to meet the prior art adduced by the defendant, the plaintiff should be estopped from asserting infringement of the patent by this Trig-a-lite device.

I believe that the defendant, guided as it doubtless was, in the interpretation of the scope of the claims of the patent, by two judicial opinions, succeeded in designing a device which avoids infringement. I have so found in an opinion to be filed concurrently with this. (D. C.) 4 F. Supp. 303.

But with the issue raised in this case we are concerned not with the matter of either validity or infringement, but with the question of relief. Motive again plays the leading role in the determination of this question. In the Trig-a-lite action the plaintiff rigorously urged infringement, and its counsel honestly was of the opinion that Mr. Hammer's testimony in the present litigation was not inconsistent with the position taken in the Trig-a-lite case; and Mr. Hammer himself testified that there was no inconsistency. Nor can I believe that plaintiff's counsel acted in bad faith in advising that the Trig-a-lite in their opinion was an infringement of the patent in suit.

Accordingly, the defendant has not established bad faith and is not entitled to the relief prayed for in its amended answer, that the patent be declared invalid or that plaintiff be deprived of its accounting. Asbestos Shingle, Slate & Sheathing Co. v. H. W. Johns-Manville Co. (C. C.) 189 F. 611; De Forest Radio Telephone & Telegraph Co. v. Radio Corporation of America (D. C.) 4 F. (2d) 134; Alliance Securities Co. v. De Vil-

biss Mfg. Co. (C. C. A.) 41 F.(2d) 668; and also a recent case decided in this court, Eclipse Machine Company v. J. H. Specialty Co., 4 F. Supp. 303.

In reaching this conclusion I do not mean to decide that the Evans Case Company did not suffer damage as the result of the various activities of the plaintiff and its representatives, but such damages as were thus sustained cannot be imputed to bad faith.

Settle decree on notice.