ART METAL WORKS, Inc., v. ABRAHAM & STRAUS, Inc.

No. 6732.

District Court, E. D. New York.
July 25, 1933.

See, also (D. C.) 4 F. Supp. 298; 2 F. Supp. 677.

Ward, Crosby & Neal, of New York City (Kenneth S. Neal and Joshua Ward, both of New York City, of counsel), for plaintiff.

William T. Kniesner of New York City (Robert S. Blair, William T. Kniesner, and Milton C. Weisman, all of New York City, of counsel), for defendant.

GALSTON, District Judge.

The validity of the patent in suit, No. 1,-673,727, granted to Aronson, for a cigar lighter, was upheld as to claims 2, 7, 12, 13, and 14, in a litigation between the same parties. (D. C.) 52 F.(2d) 951, and (C. C. A.) 61 F.(2d) 122, 123.

The defendant's structures there considered were referred to as the Evans "Automatic Lighter" and the "Roller Bearing Lighter."

The suit at bar alleges that a third form made by the same manufacturer and sold by this defendant since the former adjudication, and known to the trade as the "Trig-a-lite," is also an infringement of the patent.

There is no contention that the Trig-a-lite is similar to the Automatic; but it is asserted by the plaintiff that the Trig-a-lite is in all respects similar to the structure and mode of operation of the Roller Bearing device.

In outward appearance the two lighters are very much alike; and so far as relative positioning of the three main parts—the wick with its snuffer, the abradant wheel, and the finger piece—constituting the "one, two, three arrangement" referred to by the Circuit Court of Appeals in adopting the descriptive terminology of plaintiff's expert, Mr. Hammer, such arrangement is reproduced in the Trig-a-lite.

However, important points of difference are urged by the defendant.

It is contended that the Trig-a-lite enables the operator to obtain the shower of sparks, not by manual, but by spring, actuation of snuffer and abradant wheel and without the use of gears.

The three claims in suit recite the inclusion of such gear means; and no matter how generous the interpretation of the scope of the claims, Trig-a-lite does not embody such a gear member as the claims define. The pin and slot combination of the Roller Bearing device has been omitted. The actuation of parts is brought about by a combination of finger piece in the form of a lever which is pivoted about an axis upon which the abradant wheel is mounted. In the upper position the finger piece is pressed by a spring. The snuffer is mounted upon a horizontal lever pivoted about an axis marked E in Defendant's Exhibit H. Coiled about this axis E is a spring, one end of which projects to the left and bears on the under side of the snuffer lever. The other end of the spring extends to the right and bears under a portion of the finger piece. A pawl Q, pivoted at point O, and provided with a spring P, causes the pawl to rotate counter clockwise. Notches in the pawl are of such shape and size as enable them to lock around the pivot D.

The energy of the finger piece is used to tension the spring coiled around the axis E; that is, the whole spring is tensioned. The energy is stored in the spring without regard to the rate at which the finger is depressed; and the rate at which the abradant wheel and the snuffer move are independent of the rate at which the finger piece is depressed, but are dependent upon the strength of the spring. One of the notches of the pawl holds the snuffer lever down when the finger piece is pressed, so that the spring is tensioned until the end of the downward movement, and is finally unlatched by the finger piece, which causes the spring to throw up the snuffer lever until the other notch in the pawl contacts with the shaft on which the abradant wheel is mounted. Thus the snuffer lever cannot be forced up further by the spring.

This is neither the mode of operation of the Roller Bearing device nor of the patent. The patent discloses a connection of gearing from the finger piece to the snuffer and to the abradant wheel. That there is a different mode of operation between finger piece and spark wheel in the patent in suit and in the device Trig-a-lite appears from the dependence of movement of finger piece and spark wheel of the former, and the independence of the speed of movement of the surface of the abradant wheel with the speed movement of the finger piece in the Trig-a-lite. This may or may not be an advantage; but be that as it may, there is indicated a difference in operation, resulting from a difference in structure.

On the question of merit, it may be said that the surface movement of the sparking wheel is an important factor in spark production, because the quicker the work is done, the greater the heat, and, therefore, the greater the supply of sparks. Mr. Ray is of opinion that the wheel in the Trig-a-lite device moves much faster in the ordinary use thereof than in the ordinary use of a device made in conformity with the patent in suit. He also points out that so far as the roller bearing construction is concerned, the pin and slot combination bear on the relative ranges of movement between the spark wheel surface and the finger piece. This is not the operation of the Trig-a-lite device.

I think one must conclude then, both on the ground of construction, as well as from operation of the Trig-a-lite and the Roller Bearing Lighter, that in the Trig-a-lite one does not find a gear in the sense of the patent in suit, nor even the equivalent of a one-tooth gear of the Roller Bearing device. And inasmuch as I do not interpret the opinion of the Circuit Court of Appeals in the prior litigation as compelling so broad a construction of the claims in issue as to lead to a disregard of the limitant phrases with respect to the necessity of the inclusion of the gear member, I find that the defendant in the Trig-

a-lite device has avoided infringement by the omission of such a gear member.

Moreover, in a discussion of the matter of infringement, the position taken by the plaintiff in overcoming the pertinency of the prior art in the former litigation cannot be overlooked. For example, the plaintiff's expert, in distinguishing the German Gebhardt patent, said:

"Another distinction is noted when we proceed in the reading of the claim and find the requirement of 'means whereby, upon pressing said finger piece downwardly, said wheel is rotated by manual pressure to ignite the wick, and said snuffer is removed from the wick.' And there I must comment on what apparently was in Mr. Ray's mind in calling attention to the manual operation of this German device.

"As I understand it, the patent in suit is broadly differentiated from much prior art by having a rotation of the wheel depending upon the energy of the thumb action on the thumb piece or finger piece. In other words, if you give a short, sharp, snappy action of the thumb, you get a different effect than if you just move it down deliberately, and it is within the control of the user as to the amount of vigor with which that device shall be operated.

"There is a class of prior art, of which this German patent is representative, in which the actual operation of the wheel is not a function of the finger pressure. In illustration of that we have in this German patent a wheel k, only one-half of which is abradant; the other half is smooth. That wheel is so arranged with reference to the movable, pivoted side section of the casing that the movement of that side piece toward the left in Fig. 4, until it reaches the position shown in Fig. 5, that only the smooth portion of that wheel comes in contact with the pyrophoric metal, and therefore no sparks are produced. So that the movement by manual pressure of this green side piece does not itself produce any sparks. What it does is to turn the wheel around into the position shown in Fig. 5, and at the same time put the spring p under pressure, under tension, because the rotation of the wheel in clockwise fashion carries the little crank around with it and extends the spring.

"Now, up to that time, and that is the limit of the movement of the side piece, there will be no sparks, but having reached that point the teeth on the wheel escape from the teeth on this rack and the spring which has then been put under this tension, and which has been carried just beyond the center o of the wheel, causes that wheel to give a short, sharp, snappy movement in a clockwise direction, passing the cerated portion of the wheel across the surface of the pyrophoric metal, and giving the shower of sparks which is supposed to light the wick.

"So that it is not the downward movement of the finger piece which rotates by manual pressure the wheel to ignite the wick, although with that same movement you do raise the snuffer."

And again:

"Under those circumstances I can't go beyond that, except that the means whereby operation of said finger piece will operate the wheel and snuffer by manual pressure is not present in this patent.

"The Court: You say that because the spring e—

"The Witness: Does the work.

"The Court: Does the work?

"The Witness: Yes, sir.

"The Court: Doesn't the spring 40 do the work in part at least in the patent in suit?

"The Witness: No, sir, because all that 40 does is to oppose the action of the finger piece; it opposes the means that you must press.

"The Court: You mean if, for instance, the element 40 were omitted from the construction the finger piece would nevertheless actuate the wheel and the snuffer?

"The Witness: Yes, but it would not be returned.

"The Court: I understand.

"The Witness: To its original position.

"The Court: Yes; you would have to move it back of itself?

"The Witness: Manually move it back instead of having it spring returned.

"The Court: All right.

"The Witness: I think that answers your Honor's question regarding Claim 13 and Gebhardt, because as I view it, there are two features of that claim which Gebhardt lacks.

"The Court: Of course, the other side could very well take the view, and does take the view, that the pressure of that equivalent, as they say, finger piece, the part f, does in itself actuate the spring, which in turn does the work.

"The Witness: There is no doubt of that,

306

that that is exactly what happens, you set the spring and set the wheel, and then your responsibility ends because the spring from that time on is out of your control and does the work, and that is not the patent in suit."

With this testimony in the prior suit in mind, it seems to me that to distinguish the patents of the prior art because they indicate a spring rather than a manual operation must lead to the elimination of the Trig-a-lite device, for it must be classified among the spring-actuated devices.

With this view of the issue of infringement, it is not necessary to discuss the matter of validity of the claims.

However, it may be said that despite the inclusion in the prior art which was developed in this trial, of patents not offered in the earlier suit, notably, Wolff United States patent, No. 1,106,175, and German patent to Wolff, No. 221,577, that the defendant is concluded on the issue of validity through the estoppel created by the prior litigation. Carson Inv. Co. v. Anaconda Copper Mining Co. (C. C. A.) 26 F.(2d) 651, 655. The opinion in that case, referring to In re Potts, 166 U. S. 263, 17 S. Ct. 520, 41 L. Ed. 994, said: "We regard that case as sustaining the principle that if, in a patent litigation, a decree finally determines the principal issues of validity and infringement presented by the pleadings, and settles the litigation over those issues, it is so far conclusive as to determine other litigation between the same parties over the very same issues." However, if one assumed that such an estoppel did not exist, I think the opinion of the Circuit Court of Appeals leaves no doubt that it would not have been impressed with either of these Wolff patents as an anticipation, for, as Judge Augustus N. Hand stated, in a discussion of the Bergmann British patent, which is not unlike the structure of the Wolff patents: "There is nothing which may be reasonably called a finger piece within the meaning of the patent in suit." Judge Hand called attention to the freedom "from a cumbersome outer housing" of the snuffer, abradant wheel, and finger piece. The Wolff device certainly shows an outer housing.

Defendant may have a decree dismissing the bill.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.